**UNITED STATES of America,
Appellee,**

**v.**

**Franz BYRD, Defendant-Appellant.**

**No. 565, Docket 29763.**

United States Court of Appeals
Second Circuit.

Argued July 26, 1965.

Decided Nov. 16, 1965.

Lumbard, Chief Judge, dissented.

Mary M. Kaufman, New York City (Andrew R. Tyler, New York City, on the brief), for defendant-appellant.

Bernard W. Nussbaum, Asst. U. S. Atty., Southern District of New York (Robert M. Morgenthau, U. S. Atty., and John E. Sprizzo, Asst. U. S. Atty., Southern District of New York, on the brief), for appellee.

Before LUMBARD, Chief Judge, and HAYS and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge.

From sometime prior to 1962 through February 14, 1964, when the appellant was suspended, he held a position in the Internal Revenue Service as a tax technician, usually called an office auditor. It was his duty to examine federal income tax returns to see whether or not they accurately reflected the tax liability of the person filing the return. On December 7, 1964, an indictment in three counts was returned against him. The first count charged that on or about July 12, 1962, he and co-defendant Jeremiah Ryan, who was also an office auditor in another group within the New York office of the Internal Revenue Service, received a fee, not prescribed by law, from a co-defendant Kaufman, a certified public accountant, for auditing the 1961 income tax returns of Sidney and Carolyn Bell, clients of Kaufman. The second count similarly charged the appellant and co-defendant Lawrence Montello, an office auditor in another group within the New York office of the Internal Revenue Service, with receiving such a fee from Kaufman on or about May 7, 1962 for auditing the 1961 income tax return of Carlton and Shirley Spark, clients of Kaufman. Count three charged the appellant with receiving a sum of money from an accountant named Albert Goldstein in connection with the auditing of the income tax return of Eugene and Joan MacMillin, who were clients of Goldstein.

At the trial the principal witnesses for the Government were Kaufman, Ryan, Montello and Goldstein, each of whom testified to the transactions referred to in the indictment in which they were involved with the appellant.

Kaufman, after testifying to the appellant's activities in connection with the Bell return in the first count and the Spark return in the second count, also, over objection, testified to an additional almost identical transaction in which the appellant, for a payment to him by Kaufman of $50 audited the 1962 tax return of Herman and Wanda Sandberg, clients of Kaufman.

The defendant Byrd took the stand and testified in his own behalf. He denied ever having any conversation with Kaufman, Ryan, Montello or Goldstein concerning the payment to him of money for the auditing of any of the returns referred to in the indictment and he denied receiving or paying any money from or to Kaufman, Ryan, Montello or Goldstein in connection with the audit of any tax return. The jury returned verdicts of guilty against Byrd on all of the three counts.

On this appeal Byrd claims that the trial court committed plain error in its charge to the jury in failing to include criminal intent as one of the essential elements of the offense alleged in the three counts. There was no exception taken to the court's instructions but the appellant asserts that there were several other mistakes in the charge of sufficient gravity to constitute plain error. We conclude that, in the circumstances of this case, the omission of criminal intent as one of the enumerated essential elements of the offense charged, constituted plain error and that, therefore, the judgment must be reversed and the case remanded for a new trial.

By failing specifically to instruct the jury that criminal intent was an essential element of the offense, the court left what it did say about intent and the act being knowingly committed, unrelated to the other elements of the crime and omitted any instruction that criminal intent was an element which the Government, to convict, was required to prove beyond a reasonable doubt. While it did not define criminal intent as such, it did give one of the generally used definitions of "knowingly" [1] which in the circumstances of the case would have sufficed, because a finding that one acts knowingly presupposes that he was apprised of all of the facts which constitute the offense.

> "Ordinarily one is not guilty of a crime unless he is aware of the existence of all those facts which make his conduct criminal. That awareness is all that is meant by the mens rea, the 'criminal intent', necessary to guilt, * * *."

United States v. Crimmins, 123 F.2d 271, 272 (2d Cir. 1941).

Examining the charge as a whole, however, this definition stands entirely unrelated to the other essential elements of the crime. What its significance is in the case and how it should be treated by the jury is left to conjecture. The definition of "knowingly" was immediately followed by a substantially correct instruction on the use, for the limited purpose of showing knowledge or intent, of the evidence of the prior similar offense which concerned the Sandberg tax

---

[1]. "Now, the word 'knowingly,' as used in the indictment, means that the act or acts which were committed by the defendant were done voluntarily and purposely, not because of a mistake or inavertence or in good faith.

Now, the knowledge may be proven by the defendant's conduct and by all the facts and circumstances surrounding the case.

No person can intentionally avoid knowledge by closing his eyes to facts which prompt him to investigate.

In order to find knowledge on his part, however, you must find an awareness on his part that the act he is committing is in violation of the law, and in this case, as I have indicated to you, it is this federal law."

The instruction that the jury must find that the defendant, in committing the act was aware that he was breaking the law was incorrect and over-generous to the defendant. American Surety Co. of New York v. Sullivan, 7 F.2d 605, 606 (2d Cir. 1925).

return.[2]  These portions of the charge were preceded by the instructions concerning proof beyond a reasonable doubt, but nowhere was the jury told that the Government was required to prove criminal intent beyond a reasonable doubt. The general admonition that the Government must prove the defendant guilty beyond a reasonable doubt, and the recitation that the indictment alleged that the acts "performed by this defendant were done unlawfully, knowingly and wilfully" are altogether too tenuous and imprecise to pass as an adequate explanation that criminal intent is an essential element of the offense which must be proven beyond a reasonable doubt.  Actually the phrasing of the directions concerning the use of the evidence of the Sandberg incident tended to give to intent an undefined status, separate from the other essential elements.  Statements such as "unless you first find that the other evidence in the case standing alone establishes the defendant's guilt beyond a reasonable doubt, then the fact that he committed this other act cannot fill in that blank," "So that you consider the Sandberg return not as proving any of these elements in this case," followed by "You must be satisfied beyond a reasonable doubt that they exist," while intended properly to caution the jury against using the evidence of

the Sandberg matter on any element other than criminal intent, really left it to the jury to decide how much importance as a matter of law should be given to the factor of criminal intent and what standard of proof was required for it.

Even so, the court's treatment of the issue might have survived the test of plain error, Rule 52(b) F.R.Crim.P., except for its specific delineation of the essential elements of the offense.

The instructions which bore on intent came in the early part of the charge. Thereafter the court gave fairly full explanations of types of evidence, rulings on evidence, evaluation of testimony, an analysis of Government and defense evidence, the definition of accomplice and the cautionary remarks on dealing with accomplices' testimony, a reading of the applicable statute and comments on the three counts of the indictment.  Then toward the end of the charge the court specified the essential elements of each of the offenses charged as follows:

"1.  That the defendant was an employee of the United States.

2.  That he was acting in connection with the revenue laws of the United States.

3.  That he received a fee not prescribed by law.

---

**2.**  "Now, evidence that that act was done at one time is not proof that a similar act was done at another time or occasion. That is to say, evidence that the defendant committed another act of a like nature may not be considered by you in determining whether the accused committed any offense charged in the indictment, nor may any evidence of an alleged other act of a like nature be considered by you for that purpose.  Unless you first find that the other evidence in the case standing alone establishes the defendant's guilt beyond a reasonable doubt then the fact that he committed this other act cannot fill in that blank.  If you find that he did beyond a reasonable doubt, then, of course, it will help you.

If you find beyond a reasonable doubt from the other evidence in the case that the accused did the act charged in the particular count under deliberation, then you may consider the evidence of the alleged other act of a like nature in deter-

mining the state of mind or intent with which the accused did the act charged in the particular count, and where proof of the alleged other act of a like nature— and I am talking about the Sandberg return, which is not in the count—is established by evidence which is clear and conclusive to you, you may draw therefrom the inference that in doing the act charged in the particular count under deliberation, the accused acted knowingly and with a specific intent and not because of a mistake or inadvertence or other innocent reason.  So that you consider the Sandberg return not as proving any of these elements in this case.

You must be satisfied beyond a reasonable doubt that they exist, but if you come to that conclusion, then you may consider the Sandberg incident to indicate that he had the intention of violating the law, that he just didn't make a mistake."

4. That he received a fee for the performance of a duty."

It briefly mentioned how the jury should handle the separate counts and then said,

"Now, if you find, after such examination, that the government has proven all the four elements which I have just described to you beyond a reasonable doubt as to any of these counts, then he should be convicted on that count."

Thus in the very climax of the charge the court in short explicit terms gave the jury what they would naturally regard as the nub of the law of the case and which, coming at the end of the exposition of the law, gave them what they were most likely to hold in their minds and apply to the facts in their deliberations, and which, not only completely omitted criminal intent as an essential element but, specifically told the jury that, if they found the other four elements which were mentioned, they had a duty to convict.

Byrd made no special attack on the element of intent, for he denied accepting any bribes. The jury disbelieved him. But to sustain a conviction the Government had to prove and the jury had to find criminal intent. It was an unavoidable issue in the case.

■ We conclude that the court's failure to explain the relevance of criminal intent to the other factors in the case and to describe it as one of the essential elements of the offense, requiring, as such, proof beyond a reasonable doubt, was tantamount to no instruction at all on the subject. There was, therefore, plain error which requires reversal even though no exception was taken below to the charge as given. Screws v. United States, 325 U.S. 91, 107, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); United States v. Gillilan, 288 F.2d 796 (2d Cir.), cert. denied sub nom. Apex Distributing Co., Inc. v. United States, 368 U.S. 821, 82 S.Ct. 38, 7 L.Ed.2d 26 (1961); United States v. Noble, 155 F.2d 315 (3rd Cir. 1946).

In view of this disposition of the case we do not specifically rule upon the remaining points raised in the appeal except to comment on two or three of the issues raised, as a guide to the court at the second trial.

■■ One of these points concerns the admission by the trial court of evidence of Byrd's activities in connection with the auditing of the Sandberg tax return. The Government offered it as a part of its main case for the purpose of showing criminal intent. A vigorous objection was made by the defense but the court admitted it. The admissibility of this kind of evidence is "a matter in which the trial judge should be allowed a wide range of discretion." United States v. Feldman, 136 F.2d 394, 399 (2 Cir.). The exercise of discretion must be addressed to a balancing of the probative value of the proffered evidence, on the one hand, against its prejudicial character, on the other. The probative value is measured by the extent to which the evidence of prior criminal activities, other than a conviction, closely related in time and subject matter, tends to establish that the accused committed the criminal act charged in the indictment knowingly or with criminal intent or tends to negative the claim that the acts were committed innocently or through mistake or misunderstanding.

It is generally recognized that there can be no complete assurance that the jury even under the best of instructions will strictly confine the use of this kind of evidence to the issue of knowledge and intent and wholly put out of their minds the implication that the accused, having committed the prior similar criminal act, probably committed the one with which he is actually charged. The court in its colloquy with defense counsel conceded that prejudice of this sort would result to Byrd in letting in the evidence.

From the quality of proof standpoint for proving knowledge and intent, its probative value was largely cumulative. The evidence came from the mouth of the same witness, Kaufman, who testified to the occurrences in the first two counts. If the jury believed his testimony as to

those counts, the relating of the Sandberg incident added little, if anything, to a revelation of Byrd's state of mind. If they had disbelieved Kaufman's testimony about the first two counts, it is not very likely they would have believed his story about the Sandberg tax audit.

■ Another factor to be considered is whether the Government was faced with a real necessity which required it to offer the evidence in its main case. The defense had not, either in its claims or the statement of facts which it would seek to prove, "sharpened" the issue of intent by asserting that the act charged was done innocently or by accident or mistake. McCormick, Evidence, § 157 at 331 (1954); Vol. 1 Wharton's Criminal Evidence, § 237 at 528 (12th ed. 1955). Nor did the Government suffer from a lack of evidence of intent. Kaufman's testimony relating to the first two counts furnished ample evidence of knowledge and intent, of the same kind and quality as that shown by his testimony concerning the Sandberg tax return. There was therefore no pressing necessity that evidence of that prior occasion be offered on the Government's main case. United States v. Ross, 321 F.2d 61, 67 (2d Cir. 1963). It is, of course, conceivable that in some cases proof of the offenses charged would contain little or nothing from which an inference of guilty intent could be drawn. In such a case a trial judge would, in the exercise of his discretion, be justified in admitting as part of the Government's case, proof of a prior similar offense to show knowledge or intent. For the present purpose of this discussion it is enough to point out that the scope of discretion does not include every offer of a prior similar offense which may contribute something to a showing of intent in the Government's main case. Where the prejudice is substantial and the probative value, through the nature of the evidence or the lack of any real necessity for it, is slight, its admission at that stage may be held to be an abuse of discretion. Under such circumstances the better practice would be to sustain the objection to the offer on the Government's main case

without prejudice to its re-offer in rebuttal, if then warranted.

■ Another point raised concerning the court's charge is that, in the course of instructing the jury on the meaning and application of reasonable doubt, the court gave as one of the alternative definitions the following:

"It is a doubt to a moral certainty."

"Doubt" and "certainty" are antithetical and, in our opinion, the use of them in this manner and for this purpose would tend to create more confusion than light in the minds of the jury.

The appellant also complains that in the charge the court defined an accomplice as "one who unites with another person to commit a crime" and then went on to charge the jury as a matter of law that Ryan, Montello, Kaufman and Goldstein were accomplices. He asserts that this was particularly damaging in connection with the third count because the appellant was the only person alleged to have participated in that offense other than Goldstein. He argues that the judge's statements were therefore the equivalent of a directed verdict of guilty against him. Although it is not very likely that any such conclusion was reached by either the court or any of the members of the jury, nevertheless, the instructions on accomplice witnesses could have been so couched as to obviate this problem. A somewhat similar situation arose in the case of United States v. Johnson, 343 F.2d 5 (2d Cir. 1965), and was the subject of a point raised on appeal, but the court found that no error had been committed. It should be stated, however, that the context of the accomplice instructions in Johnson made the possible implication less damaging to the defendant; and the record in Johnson indicates that there were others besides the particular accused with whom the accomplice could have been associated.

■ The only remaining point raised on appeal which we shall mention concerns the court's instruction to the jury regarding Title 18 U.S.C. § 2, known as the "aider and abettor" statute. As the

nature of the Government's case against Byrd, in the charges contained in the first and second counts, placed Byrd in the role of one who was either aiding and abetting, or causing, office auditors Jeremiah Ryan and Lawrence Montello to receive fees for the performances of their respective duties, the court should have given the jury a fuller explanation on aider and abettor and the applicability of the provisions of the statute to the issues in the case. They needed something more than a mere reading of the statute. There were no exceptions to the court's charge and what has been said about reasonable doubt, the accomplice's testimony and the application of the aider and abettor statute do not constitute plain error. However, at retrial both the points discussed and those not commented upon, if they again arise, warrant consideration by the trial court.

The judgment of the district court is reversed and the case is remanded for a new trial.

LUMBARD, Chief Judge (dissenting):

In my opinion, the failure of the trial judge to include an instruction on the necessity of finding criminal intent in the list of essential elements which the jury was directed to find before it could convict does not call for reversal because he had already given sufficient general instructions on the question of intent and because the conduct of the defense had effectively eliminated the issue of intent from the case.

During his charge Judge Cannella instructed the jury that the acts must have been done purposely and not by mistake, inadvertence, or in good faith; indeed he said that an awareness by the defendant that the act committed was in violation of the law was necessary. The defense made no objection whatever to the charge. Although it would have been desirable to have included intent in the summation of the essential elements necessary for conviction at the end of the charge, in view of the fact that the issue of intent was never raised during the trial, it was not necessary to stress it by repetition. From a reading of the whole charge, I think it was apparent that intent was an element to be proven by the government.

In any event, Byrd cannot claim he was prejudiced by the absence of a charge concerning intent when there was no issue of intent in the case. Byrd's entire defense was that he did not receive the alleged bribes. Byrd flatly denied that he had ever received or been given any money by Kaufman or Goldstein. Thus there could never have been any question of the intent if the jury believed the testimony of the prosecution witnesses, or if they disbelieved them and believed Byrd. There was no issue of intent for the jury to consider. In the absence of any objection to the charge as it was given, I see no reason to invoke our power under Rule 52(b) Federal Rules of Criminal Procedure when the error concerned a matter which had not been in contention at any time during the trial.

Nothing in Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945) or United States v. Gillilan, 288 F.2d 796 (2 Cir.), cert. denied sub nom. Apex Distributing Co., Inc. v. United States, 368 U.S. 821, 82 S.Ct. 38, 7 L.Ed. 2d 26 (1961) suggests the contrary is required. In Screws the narrower instructions were considered necessary in order to preserve the constitutionality of the statute. There is no indication that the instructions were not objected to in Gillilan, supra, and it is apparent that they concerned issues which were contested during the trial. United States v. Noble, 155 F.2d 315 (3 Cir. 1946), cited by the majority, is also inapposite since the trial judge there had given no oral instructions whatever about the elements of the crime charged.

It seems to me highly undesirable for us to allow counsel to urge as error on appeal matters about which no complaint was made at the time. Moreover, I do not see how it can fairly be claimed that failure to stress what was understood should now be considered by us to be reversible error requiring a new trial.

I agree with so much of the majority's opinion which holds that evidence concerning defendant's commission of similar acts at other times should not ordinarily be admitted unless the question of intent is in dispute. In the circumstances of this case, therefore, the testimony concerning Sandberg's tax return should not have been admitted on the government's direct case. But because the evidence on that matter was largely cumulative and offered by a witness who, if believed on that matter, would doubtless also have been believed by the jury on the similar acts under indictment, we should not hold the admission of the evidence to be reversible error.

I would affirm.