The **UNITED STATES** of America,
Appellee,

v.

Benjamin A. **SCHABERT**, Defendant-
Appellant.

No. 385, Docket 30279.

United States Court of Appeals
Second Circuit.

Argued May 10, 1966.

Decided June 14, 1966.

Michael J. Walsh, Asst. U. S. Atty., Eastern District of New York (Joseph P. Hoey, U. S. Atty., Eastern District of New York, on the brief), for appellee.

Arthur Karger, New York City (Zoloto, Karger & Zurkow, New York City, on the brief), for defendant-appellant.

Before WATERMAN, KAUFMAN and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

During the period covered by the facts of this case, the defendant-appellant, Benjamin A. Schabert, was the financial and business agent of Plumbers Local Union 371, a labor organization affiliated with the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada. Several members of this local union were among the eighteen to twenty employees of Novak & Co., Inc., a plumbing firm, which, in late 1958, had been awarded a contract to do the plumbing work in the construction of a New York City housing project on Staten Island, known as the Stapleton project. On August 29, 1963, Schabert was indicted on three counts for violations of Title 29 U.S.C. § 186(b) [1] (unlawful receipt of money by a labor official from an employer). The first count charged him with having received from Novak & Co., Inc., approximately $1150 on or about April 19, 1960; the second count charged him with having received from the same company approximately $250 on or about July 19, 1960; and the third count alleged the receipt from Novak & Co., Inc., of $300 on or about January 28, 1961.

[1]. 29 U.S.C. § 186 provides:

"(a) It shall be unlawful for any employer * * * to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value—

(1) to any representative of any of his employees who are employed in an industry affecting commerce;

* * * * *

"(b) (1) It shall be unlawful for any person to request, demand, receive, or accept, or agree to receive or accept, any payment, loan, or delivery of money or other thing of value prohibited by subsection (a) of this section."

The evidence showed that, shortly after the work commenced in the spring of 1959, Schabert met with Leon Novak, president and principal shareholder of the plumbing concern, at a restaurant next door to the offices of the union and discussed the project. As the result of their talk, Schabert agreed to see to it that the Novak Company got the best men the Union could furnish in return for which the Company agreed to pay Schabert $5 an apartment.

Novak testified that six or eight weeks after the meeting at the restaurant he met Schabert and paid him a sum of money in cash. Thereafter, on several other occasions, Novak paid Schabert additional sums in cash, all of which added up to the $1150 alleged in the first count. Novak could not recall the specific sums paid on each separate occasion; but he testified that he wrote the amount of each of these payments on a separate slip of paper and then turned over an accumulation of these slips to his bookkeeper, Frieda Farb, who, in the latter part of 1960, entered the total of $1150, with the date April 4, 1960, in a small ledger book, the pertinent page of which, entitled "B. Schabert," became a Government exhibit in the case.[2] After the entry had been made, the slips were destroyed. Novak specifically remembered the occasions when the cash payments were made by him to Schabert as alleged in the second and third counts, as well as the amount paid in each instance. The dates and amounts of these payments were also entered by the bookkeeper on the same page of the small ledger.

The bookkeeper testified that all of the payments came out of a special fund which had been built up by padding the payroll. Withdrawals from the fund were regularly entered in a cash disbursements journal in chronological order. This larger book was also a Government exhibit. While the payments of $250 and $300 were reflected in the expenditures listed in the journal, there were no corresponding disbursements shown for the amounts totalling $1150.

The only evidence offered by the defense was the testimony of two witnesses who testified to Schabert's good reputation for honesty and integrity. The jury found the defendant guilty on all three of the counts. He was sentenced to three months imprisonment and fined $5000 on the first count; the sentences on the second and third counts were suspended and he was placed on probation for two years. We affirm.

The appellant claims that the trial court erred in admitting into evidence, under the Federal Business Records Act,[3] a photostatic copy of the page from the small book or ledger which showed the payments made to Schabert. It is asserted that it was not kept in the regular course of business because the entry was not made contemporaneously with, or within a reasonable time after, the making of the payments, because the ledger entry of $1150 for April 19, 1960 was not supported by corresponding journal entries, and because there was insufficient evidence to support the authentication of the ledger book. It is not, however, necessary to discuss the questions raised concerning the admissibility of the ledger under the Business Records Act because, as evidence, it was purely cumulative. Before the ledger was admitted into evidence, Novak had testified without objection that, between the spring of 1959 and a time prior to July 19, 1960, he had made five or six payments to Schabert which had totalled $1150.[4] It

---

2. There was written at the top of this exhibit:
 "Staple—693 apts @ 5 = 3465 B. Schabert." Beneath this heading were the following entries:
 "4/19/60 1150
 7/19/60 250
 1/28/61 300"

3. 28 U.S.C. § 1732.

4. Novak's testimony on direct examination was in pertinent part as follows:
 "Q. Do you remember any occasion when you gave Mr. Schabert a specific amount of money? A. Yes. On July 19, 1960, I gave him $250.

cannot be forcefully contended that the jury may have disbelieved this testimony but did believe the ledger entry, because all of the testimony on the subject makes it perfectly clear that Novak was the only one who had firsthand knowledge of the payments to Schabert and, as such, reported them to the bookkeeper, who, under his direction, made the entry in the ledger. Briefly, therefore, the jury reasonably could not have believed Novak's testimony in one instance and not in the other. Since the crucial evidence was already in, the reception of the ledger as an exhibit did nothing more than recount the same information from the same source and in no wise prejudiced the appellant. Doss v. United States, 355 F.2d 663, 666 (8 Cir. 1966); Gajeweski et al. v. United States, 321 F.2d 261, 267 (8 Cir. 1963), cert. denied 375 U.S. 968, 84 S.Ct. 486, 11 L.Ed.2d 416 (1964); United States v. Quong, 303 F.2d 499, 504 (6 Cir. 1962), cert. denied 371 U.S. 863, 83 S.Ct. 119, 9 L.Ed.2d 100 (1962); United States v. Perez, 242 F. 2d 867, 870 (2 Cir. 1957), cert. denied 354 U.S. 941, 77 S.Ct. 1405, 1 L.Ed.2d 1539 (1957).

The appellant claims several errors relating to the court's charge to the jury. At the trial his counsel had requested a specific instruction concerning the defendant's failure to testify. The court had decided to grant the request and, with this in mind at a particular point in the charge said, "I normally do not include this in the charge. I do so only because I have been requested to do so." Then instead of giving the instruction requested, as he intended to do, the judge advised the jury about the weight or value to be accorded to evidence of the good reputation of the accused for honesty and integrity. Realizing his mistake, he then said, "Oh, no, I beg your pardon; that is not the portion that I would not have given. I would have given this portion of the charge. But this section, this portion of the charge I give because I have been requested to do so."

The trial judge apparently was laboring under the misapprehension that it is error to instruct that no adverse inferences could be drawn from a defendant's failure to testify in the absence of a request for such a charge. Although this court has said that it is the better practice not to charge on this subject, it is not reversible error to do so. United States v. Woodmansee, 354 F.2d 235, 236 (2 Cir. 1965). Moreover, it is entirely proper and even necessary to give such a charge if it is requested by a nontestifying defendant. United States v. Woodmansee, supra. Despite the fact that the gratuitous prefatory remarks

"Q. Where was that? A. At the Candlelight.
"Q. Was anyone else present at that time? A. No, sir.
"Q. Did you have any conversation with Mr. Schabert about it? A. No, just generalities.
"Q. How about any time after that? A. No. On January 28, 1961, $300.
"Q. How much? A. $300.
"Q. And what was the date? A. January 28, 1961.
"Q. Was anyone present on that occasion? A. Just the two of us.
"The Court: And at what place was?
"The Witness: At the Candlelight.
"Q. So that all your meetings with him when you gave him money were at the Candlelight Restaurant; is that correct? A. To the best of my recollection, yes.
"Q. So that on two occasions you recall that you gave him $250 and $300?

A. Yes, sir.
"Q. How about prior to that? A. Well, prior to that, as an accumulation or a total of some six, five or six meetings, I had given him a total of $1150.
"Q. You gave him a total of $1150? A. That is right, sir.
"Q. On how many occasions? A. I would say five or six occasions.
"Q. Do you know when the first occasion was? A. Well, the first occasion, I believe, was about the second time I met him at the site.
"Q. And when would that be? A. That would be in the spring of 1959.
"Q. And the payments continued until January of 1961? A. That is correct, sir.
"Q. And how much did you give him all together? A. $1700."

were improper and would have been better left unsaid, they were not so distracting as to confuse the jury or reduce the clarity and force of the instruction that no inferences were to be drawn against the defendant because he did not take the witness stand, nor did they otherwise prejudice the accused.

 The appellant also complains of that part of the charge which dealt with evidence of the defendant's good reputation for honesty and integrity. The instruction given on the weight or value to be accorded such evidence was in accord with our earlier decisions in United States v. Minieri, 303 F.2d 550, 555 (2 Cir. 1962) and United States v. Lowenthal, 224 F.2d 248, 249 (2 Cir. 1955) and was correct. Equally without merit is the contention that the trial judge erred in refusing to charge the jury that it is also a violation of Title 29 U.S.C. § 186 for an employer to make payments to a union official. This was sought to buttress the attack on Novak's credibility made by the defense on cross-examination. There was ample evidence before the jury of Novak's part in the payment of money to Schabert, and the court's charge on credibility was adequate. Its refusal to accede to defense counsel's request specifically to inject into its instructions a discussion of Novak's guilt under Title 29 U.S.C. § 186 was, under the circumstances, proper and not an abuse of discretion.

 Another point raised on this appeal concerns the trial judge's own inquiries of the witness Novak, following an objection made by defense counsel to the Government's questions designed to imply that Schabert could create delays and otherwise make difficulties for Novak and his company because under the contract between the Plumbing Contractors' Association and the Union, the Union had the right to inspect Novak & Co.'s work to insure compliance with the applicable codes. The trial judge made a few brief inquiries to determine the relevancy of the contract clause in question and sustained defense counsel's objection. Appellant now argues that the judge's questions were so prejudicial that they constituted reversible error. There is, however, no validity to this claim. No objection was made to any of the court's questions, and the witness' answers, to the effect that the Union had no right under the contract to impede work on the project in this fashion, tended to remove rather than create any prejudice to the accused.

 The appellant seeks reversal or a new trial under Rule 52(b), F.R.Crim. P., on several other grounds of plain error. None has merit. On his cross-examination of Novak and the bookkeeper and in his argument, defense counsel sought to show that the cash payments to the appellant were fictitious and that the padding of the payroll and the special fund created from that source were an income tax evasion device. The trial judge obviously felt that there may have been some confusion in the minds of the jury as to the specific charge against the accused and said in the course of his instructions, "This is not an income tax case." No exception was taken to this statement at the trial and it does not constitute plain error. The trial court also refused to charge, as the defendant requested, that evidence of good reputation for honesty and integrity may raise a reasonable doubt "where without it none would exist," instead of which the court said, "when considered with all other evidence." No exception was taken to the refusal to charge as requested, or to the charge as made, and the claim cannot be presented for the first time on appeal because it does not amount to plain error.

 Appellant also complains that the trial court failed to instruct on the element of intent, gave inadequate definitions of the words "wilfully" and "knowingly" and did not sufficiently discuss the elements of the offense. While it is true that the charge in many respects left much to be desired and may not have

survived properly taken exceptions,[5] nevertheless, we are not of the opinion that the shortcomings are such as to work an obvious unfairness to the accused or perpetrate a miscarriage of justice. The appellant relies heavily upon the case of United States v. Byrd, 352 F.2d 570 (2 Cir. 1965) in which a conviction was reversed because the trial court's charge improperly dealt with criminal intent as an essential element of the offense. In that case, as in the present one, we indicated that enough of a definition of ordinary criminal intent could be winnowed out of what the court said about the word "knowingly," to survive the claim of plain error. But the Byrd case is distinguishable from the present case in that the trial court in Byrd, in effect, removed the element of intent from the case by reciting, toward the end of the charge, four essential elements which the court said constituted the offense, but it failed to include in the four described, the element of criminal intent. The court then instructed the jury that if they found the four elements which the court mentioned proven beyond a reasonable doubt, they had a duty to convict. This is what made the defect plain error in that case because the jury was instructed to find the defendant guilty solely on a finding of four elements which did not include criminal intent. That is not the case here. While the definitions of the words "knowingly" and "wilfully" were not as full and enlightening as those usually given, no exception was taken at the time, and sufficient was said to advise the jury that it had to find that the acceptance of money was done wilfully and knowingly and that mere acceptance was not enough.

We have examined the portion of the material withheld from the appellant, which had been produced by the Government in response to appellant's motion under the Jencks Act, Title 18 U.S.C. § 3500, and conclude that the trial court did not err in not directing the Government to make such portions available for inspection by appellant's counsel.

The judgment of the district court is affirmed.

5. The pertinent portion of the charge is the following:

"You have got to decide whether in fact Novak gave money to Schabert. It makes no difference here whether it would be a loan; it is a crime to receive or accept any money.

"Now, of course, this being a criminal statute, the receipt and acceptance of money must be done knowingly and wilfully. If a man were in a drunken stupor and somebody stuck money in his pocket, you would not say that he received it knowingly and wilfully. The only testimony on this score is the testimony of Novak, who is the man who said, 'I gave him the money. I gave him a specific amount of money. On January 28, 1961, I gave him a specific amount of money. On July 19, 1960, and prior to that on this job, I gave him'—I think he said—'eleven hundred dollars.'"