**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Alexander GAUS, Jr., Defendant-Appellant.**

**No. 71–1885.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 21, 1972.

Decided Jan. 10, 1973.

Rehearing Denied Jan. 26, 1973.

---

Anna R. Lavin, Chicago, Ill., for defendant-appellant.

John O. Olson, U. S. Atty., Madison, Wis., for plaintiff-appellee.

Before KILEY and STEVENS, Circuit Judges, and CAMPBELL, Senior District Judge.[1]

1. Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

KILEY, Circuit Judge.

Defendant Gaus has appealed from his conviction under an indictment charging in Counts I and II, respectively, the transportation or causing the transportation of a $6,000 check, and the transportation of a $5,000 check, from Wisconsin to Illinois, knowing the checks were converted or taken by fraud, in violation of 18 U.S.C. § 2314. We affirm.

In the spring of 1967 Gaus was invited by the Board of Directors of the Cedar Crest Retirement Home, a not-for-profit corporation in Janesville, Wisconsin,[2] to a meeting at Cedar Crest. Gaus attended the meeting and persuaded the Board of Directors that he could secure a loan for construction of a nursing home under consideration. Gaus requested, as an advance for his expenses in securing a construction loan of $1,200,000 for Cedar Crest, the $6,000 check subject of Count I. He told Cedar Crest officials that the $6,000 would be returned to them as part of the loan he was to secure. The check was made payable to, and was endorsed and deposited by, Joral International, Ltd. (Joral) in Chicago, Illinois. A written application for the loan was submitted to Gaus at Joral. Thereafter several inquiries directed to Gaus by Cedar Crest with respect to the pending loan were met with responses by Gaus that "something would materialize soon," that "maybe" Cedar Crest would get a "Christmas present" and "would finally get their loan after all." Gaus said he would be

getting a written confirmation "momentarily." After January 1, 1968, he said that an audit was being made of all Joral accounts and Cedar Crest would soon receive a refund of $6,000. Cedar Crest received neither the loan nor a refund of the $6,000.

The $5,000 check in Count II was issued July 17, 1967 by the Rock County National Bank as "earnest or faith money" requested by Gaus for preparation of a proposal to borrow between 1 and 1.4 million dollars from insurance companies for construction of a community nursing home in Clinton, Wisconsin. Gaus promised the group of investors, including an ordained minister of the Church of Christ in Footville, Wisconsin, that the loan would be made in thirty days or less. Gaus was given the check as an officer of the Church of Christ Manors Inc.[3] and it was deposited by Joral in a Chicago bank. The loan was never secured and the $5,000 was never returned. On September 29, 1969 the indictment was filed and the Gaus trial and conviction followed.

I.

Gaus contends that the indictment of September 29, 1969 is fatally duplicitous. He argues that 18 U.S.C. § 2314 prohibits two distinct types of conduct, one in each of the first two paragraphs.[4] The first paragraph prohibits interstate transportation of goods known to have been "stolen, converted or taken by fraud." The second paragraph prohibits

---

2. Property of which is held by the Wisconsin Conference of Methodist Churches.

3. The Church of Christ Manors Inc. was purportedly a Washington, D. C. corporation, organized by Gaus and others to build nursing homes all over the country with loans from insurance companies and United States agencies.

4. § 2314. Transportation of stolen goods, securities, moneys, fraudulent State tax stamps, or articles used in counterfeiting

Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value

of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud; or

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transports or causes to be transported, or induces any person to travel in, or to be transported in interstate commerce in the execution or concealment of a scheme or artifice to defraud that person of money or property having a value of $5,000 or more; or

\* \* \* \* \*

one, who has devised a scheme to defraud, from interstate transportation of, or causing the transportation of, any person in execution or concealment of the scheme. Gaus argues that Count I charges criminal violations of both paragraphs by using the phrase "transported or caused to be transported." He also claims both counts are duplicitous because both use the phrase "knowing the same to be stolen, converted or taken by fraud."

This point was not raised in the trial court until after a verdict was rendered. The government concedes that if a necessary element is missing, this court must consider the point any time it is raised in the trial or appellate process. It insists, however, that no essential element was missing from the indictment and that therefore the issue is waived in this court.

■ We hold that the duplicity issue is waived. The Fourth Circuit in United States v. Harbin, 377 F.2d 78, 80 (4th Cir. 1967), held the failure to challenge the indictment for duplicity constituted a waiver under Rule 12(b)(2) F. R.Cr.P. where not raised until the "discuss[ion] [of] proposed instructions with counsel." That decision reflects the view of Professor Moore that "ordinarily" the attack on indictments under Rule 12(b)(2) must be raised before trial, 8 Moore's Federal Practice ¶ 8.-04(1) at 8–13 (2d ed. 1965); that "generally" an indictment is not to be dismissed for duplicity; that the proper means to raise the point is by motion to compel the government to elect between the duplicate charges for prosecution; and that "ordinarily" a defendant is not "disadvantaged" by duplicity.

II.

The court permitted proof of eleven similar transactions between Gaus and various religious and charitable organizations in the period from November, 1966 to November, 1967. Gaus concedes that evidence of similar offenses is admissible, as an exception to the "prior crime rule," to show design. He contends, however, that the indictment here does not allege design, that permitting the proof of the eleven "similar offenses" here was an abuse of discretion because the probative value of that proof was far outweighed by the prejudice to Gaus; and that permitting that proof in the government's case in chief was inappropriate under this court's decision in United States v. Stanley, 411 F.2d 514, 516 (7th Cir., 1969).

In a pre-trial motion Gaus sought a ruling precluding proof of "similar offenses" to establish a design, since the indictment failed to charge that the two offenses were part of a scheme or design. The motion was denied on authority of this court's decisions in United States v. Turner, 423 F.2d 481, 483–484 (7th Cir. 1970); United States v. Marine, 413 F.2d 214, 216 (7th Cir. 1969); United States v. Jones, 438 F.2d 461, 465–466 (7th Cir. 1971), because the proof would tend to prove the element of scienter.

In ruling upon Gaus' pre-trial motion, addressed to prior offenses in general, the district court was not directed to concrete instances with references, for example, to the remoteness from the instant charge of the other "criminal activities." There was accordingly no sufficient basis at the pre-trial stage to enable the court to determine what quantum of proof was necessary.

During trial Gaus' counsel did not object specifically to the evidence of "similar offenses" on the ground of prejudice. After the government rested, Gaus moved for a mistrial because of prejudice from the cumulative effect on the jury of the evidence of the other "similar offenses." The motion was denied.

■ It is clear that the evidence of other "criminal activities," the earliest in November, 1966, is not so remote in time from the 1967 charges in the indictment as to weaken its probative value. Also the other "criminal activities"

are of the class *crimen falsi*.[5] The question remains, however, whether the admission of the quantum of proof of the other "criminal activities" prejudiced Gaus unduly so as to result in an abuse of discretion, and even if not, whether error was committed in permitting the government to adduce the evidence in its case in chief, instead of in rebuttal.

■ In United States v. Jones, *supra*, at 465, this court referred to the necessity of balancing the probative value against the prejudicial effect of the evidence, and the court noted that this balancing process is in the first instance within the discretion of the district judge. *See also* United States v. Machen, 430 F.2d 523, 525–526 (7th Cir. 1970); United States v. Byrd, 352 F.2d 570, 574 (2nd Cir. 1965).

Gaus' attorney deferred opening argument until the government rested its case. He then argued that the defense would be Gaus' sincerity and good faith in attempting to obtain the loans. The defense testimony was to that effect. Had the opening argument for Gaus been made before taking of evidence began, instead of after the government rested, the district court could have learned what proof of "similar offenses" the government intended to present, and the court then have determined an appropriate limit.

The decision in United States v. Byrd, 352 F.2d 570 (2nd Cir. 1965), cited by Gaus on this contention, is not to the contrary. There, after the court decided to reverse on instructions, it commented on guides for the trial court in the new trial. The court found that the issue of intent had not been "sharpened" by defense "claims" or by the defense's "statement of facts." The court stated that where prejudice is substantial and the probative value is, inter alia, slight because of no real necessity for it, admission of proof of other offenses may be an abuse of discretion. The court advised better practice would be to sustain the defense objection to the government proof without prejudice to its reoffer in rebuttal if warranted. An exception noted would be where proof of the offense charged would contain little or nothing for an inference of intent. *Byrd, supra*, 352 F.2d at 575. We agree with the *Byrd* guidelines. But clearly that decision is not pertinent here where there was no opportunity for the district court to determine what proof was necessary, although perhaps eleven "similar offenses" would strain the idea of necessity; and no objection was made to the proof.

Were the record that Gaus' defense was not that he intended no fraud, or had his attorney not argued that point to the jury, the quantum of proof permitted would likely be held prejudicial.

■ Perhaps we would not normally approve admission of eleven other "similar offenses" into evidence in a government case in chief. Only the number necessary to prove prima facie the essential element of scienter should be permitted. And where the defense places his good faith in issue, a limited number only should be permitted in rebuttal. However, this court cannot lay down an exact allowable minimum and maximum of such evidence to fit all cases. Determination of what limited number will be sufficient in chief and in rebuttal is the function of the trial judge in an appropriate exercise of his discretion. He must weigh the probative value of the evidence against the likely prejudice to the defendant. United States v. Jones, *supra*. He must guard against permitting excess proof to lead the jury into finding a defendant guilty, not because he committed the offense charged, but because he is a "bad man."

Gaus implicitly concedes that had the proof been properly allocated to the government's case in chief and rebuttal, there would have been no abuse of dis-

5. See the concurring opinions of Kiley, J. in United States v. Escobedo, 430 F.2d 14, 21 (7th Cir. 1970), and United States v. Gornick, 448 F.2d 566, 573 (7th Cir. 1971).

cretion. The implication weakens Gaus' claim that prejudice to him "overwhelmingly outweighed" the probative value of the proof of "similar offenses." The dictum in United States v. Stanley, 411 F.2d 514, 516 (7th Cir. 1969), a bench trial case, with respect to the probable error in admitting proof of other offenses, does not control our decision here. The allocation of this proof under the court's direction was moot after the government rested, since the eleven "similar offenses" had already been proved. We need not consider the denial of Gaus' new trial motion based on the claim of prejudice in the admission of the eleven similar "criminal activities" in view of our decision sustaining the ruling denying a mistrial at the close of the government's case.

■ We are not persuaded, however, that either the disorder in the proof of, or even an excessive proof of, the other transactions requires reversal of the convictions based on such clear proof of guilt as this record discloses. In our view an appropriate order of proof with an appropriate limit as to quantity of proof would not have brought a different result.

### III.

■ Gaus contends he was denied a fair trial through the "delinquency" of his trial counsel who "abandon[ed] his obligation" to defend Gaus, and his virtual concession to the jury that Gaus was a "bad man." The record shows that Gaus refused to cooperate with his attorney in preparation of a defense, especially with respect to the proof of "similar offenses." On appeal Gaus points, for example, to the failure of his trial counsel to object to proof of each extra-indictment offense. His attorney may have thought it better to move for mistrial because of all this proof, rather than risk irritating the jury by frequent objections.

In his closing argument defense counsel may have thought it prudent not to paint Gaus as completely moral. Instead

he argued that men like Gaus take risks that are abnormal, but that they really expect they might succeed in getting loans, and that the victims were financially desperate—with no normal local borrowing power—and were too easily persuaded by Gaus, whose activity was not criminal but in good faith. The district judge after verdict told Gaus his attorney had been "most diligent in your defense . . . and has done everything he could, that a good lawyer can do, for his client." We find no merit in Gaus' contention. Neither do we find reversible error in the conduct of the government attorney in producing testimony, or in argument.

### IV.

■ Finally, Gaus claims reversible error in the court's instruction with respect to specific intent, required in the charged offense, together with evidence of "similar earlier or later offenses." His attorney objected to the instruction. The instruction is from Section 4.03 of Jury Instructions in Federal Criminal Cases, by the late Judge Walter J. LaBuy. The LaBuy instruction, however, makes no reference to "later" similar offenses. The court also gave an instruction on specific intent from Section 13.-08 of the Devitt and Blackmar Federal Jury Practice and Instructions. This model instruction does refer to "later or earlier" acts.

■ Gaus claims the instructions are "confusing and impossible of application" and invited the jury to decide that because Gaus committed earlier or later offenses he probably committed the one charged. He has not persuaded us that the jurors would be confused and unable to apply the law in the instruction to the facts before us. He relies on the instruction given in United States v. Byrd, 352 F.2d 570, 574 (2nd Cir. 1965), but the instruction there is of no aid to him. The court there did not find an instruction similar to the one in dispute "confusing and impossible of application," but did state the instruction was

"substantially correct." In our Circuit, proof of later similar offenses is admissible under a proper exercise of discretion. *See* United States v. Hoffman, 415 F.2d 14, 18–19 (7th Cir. 1969).

Affirmed.