UNITED STATES of America,
Plaintiff-Appellee,

v.

Bernard FEINBERG,
Defendant-Appellant.

No. 75–1762.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 8, 1976.

Decided May 17, 1976.

Rehearing Denied July 12, 1976.

Joseph A. Lamendella, Philip B. Kurland, Chicago, Ill., for defendant-appellant.

Samuel K. Skinner, U. S. Atty., Anne Bowen Poulin, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, HASTINGS, Senior Circuit Judge, and EAST, Senior District Judge.*

EAST, Senior District Judge.

The defendant-appellant Bernard Feinberg (Feinberg) appeals from his judgment of conviction and sentence to custody on one count and suspension of sentence on three counts of violating 18 U.S.C. § 1341 (mail fraud). We affirm.

### INDICTMENT AND TRIAL

The indictment charged that from November, 1971 to June, 1975, Feinberg illegally schemed to defraud the citizens of Cook County, Illinois of moneys due for taxes on property located at 30–32 South Wells Street, Chicago, Illinois (Wells Street) and at 210–212 West Monroe Street, Chicago, Illinois (Monroe Street) in that he willfully and knowingly misrepresented to the Cook County Board of Appeals the date on which buildings on those two properties

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

were demolished and, through those misrepresentations, induced them to reduce the assessed value of the respective properties, resulting in a lower tax bill. The indictment further charged that six separate items were sent through the United States mail in furtherance of Feinberg's illegal scheme. Each mailing furnished the basis for a count.

Feinberg was tried to the District Court, sitting without a jury, and found guilty as charged on Counts One, Two, Five and Six and acquitted on Counts Three and Four.

## ISSUES ON APPEAL

We deem the pertinent issues on review to be:

1. Did the District Court err in concluding that there was sufficient evidence to deny Feinberg's motion for acquittal at the end of the Government's case-in-chief and to convict Feinberg at the conclusion of the entire case?

2. Did the District Court err in allowing the Government to introduce for the first time evidence of Feinberg's past similar conduct during rebuttal?

3. Is the "mail fraud" statute, 18 U.S.C. § 1341, as judicially construed, void for vagueness?

## FACTS

The pertinent facts appearing in the Government's case-in-chief are:

Feinberg was a partial beneficial owner, as a conditional sales vendee in possession under several written executory contracts of sale, of the two parcels of land designated as 30–32 South Wells Street (Wells Street) and 210–212 West Monroe Street (Monroe Street) in the City of Chicago, Illinois, upon which were located several buildings used for rental investment purposes. Those buildings were intact and partially occupied, and the tenants paid Feinberg substantial amounts of rent through December, 1971.

During November, 1971, Feinberg contracted with National Wrecking, a company engaged in building demolition, for the wrecking of the buildings upon the Wells Street and Monroe Street parcels. City of Chicago permits for the demolition were issued on November 17, 1971. The permits were delivered to National Wrecking. They proceeded with the demolition work by first stripping the buildings, removing readily marketable salvage. The stripping work continued while parts of the four buildings were still partially occupied. Actual demolition of the walls of the buildings on the two parcels commenced and was completed during the month of February, 1972.

The Diversey Corporation, an international manufacturing concern with headquarters in Chicago, (Diversey) was the conditional sales vendor under the existing executory contract of sale of the Monroe Street parcel. Under date of January 15, 1972, Feinberg mailed a letter over his signature in the United States mails to a Mr. F. E. Horn, a Vice President of Diversey, stating, *inter alia*:

"Your company will be receiving within a week to ten days an official notice from the Cook County Assessor's Office as to the 1971 assessment on land and building. I have been informed unofficially that the land value has doubled on this property and I do not know what the real estate valuation could have been increased to if there was no one watching the assessment procedure on behalf of your company . . . also note your records that immediately upon receipt of this official notice of assessment that it be sent on to me so that we may within the prescribed time set by law file an assessment complaint on any over assessment that may have taken place."[1]

On January 31, 1972, Diversey mailed to Feinberg via the United States mails the Cook County Assessor's notice of assessed

---

1. This letter was the subject of Count One of the indictment upon which Feinberg was found guilty.

valuation on the Monroe Street Property showing an increased 1971 assessed valuation for the improvements (building) in the amount of $202,843.[2]

On February 2, 1972, Feinberg personally presented at the Office of the Real Estate Board of Appeals for Cook County, Illinois (Board)[3] over his signature two separate 1971 Real Estate assessed valuation complaints.

The first complaint alleged an over-assessment on the Monroe Street property in the amount of $200,000 for the reason "Building vacated for demolition—buildings on premises wrecked." The Board's file jacket labeled "1971 Real Estate Board of Appeals" and numbered 2511 under date of February 2, 1972 under the name of Bernard Feinberg, in evidence, contains, *inter alia*:

The mentioned complaint signed by Feinberg;

City of Chicago building permit for "work at: 210–12 W Monroe St, X Wreck One 5 Sty. Building," and bearing the *approved date of "Jun 17 1971"* (italics supplied);

Hearing Officer Stark's "*Findings*: Vacant land only. Land increased 50% without notice"; and

Notation of the Board's action on the reverse of the complaint: "Bldg Wrecked Remove" and a decrease of total valuation in the amount of "202843" with the further notation "Final Action Transmitted Feb 9–1972 to County Assessor."

The second complaint alleged an over-assessment on the Wells Street Property in the amount of $26,615 for the reason "Building vacated for demolition—buildings on premises wrecked." The Board's file jacket labeled "1971 Real Estate Board of Appeals" and numbered 2512 under date of

February 2, 1972 under the name of Bernard Feinberg, in evidence, contains, *inter alia*:

The mentioned complaint signed by Feinberg;

City of Chicago building permit for "work at: 30 S. Wells, X Wreck One Sty. Building," and bearing the *approved date of "Jun 17 1971"* (italics supplied); Hearing Officer Stark's "*Findings*: Vacant land only. Land increased 50% without notice"; and

Notation of the Board's action on the reverse of the complaint: "Bldg Wrecked" and a decrease of total valuation in the amount of "26615" with the further notation "Final Action Transmitted Feb 9–1972 to County Assessor."

Feinberg did not in either instance present to or advise the Board of the City of Chicago's wrecking permit issued November 17, 1971, under which National Wrecking performed the demolition work as above mentioned.

Notice of the Board's deletion of the assessed valuation of the improvements on the Wells Street and Monroe Street properties respectively was in due course sent to Feinberg.[4]

In April, as required by law, the Cook County, Illinois Treasurer mailed to Feinberg via United States mails official tax bills, as computed on the reduced 1971 assessed valuations on each property. Feinberg paid the taxes as billed during 1972.

The amount of taxes billed and paid, but for the deletion of the assessed valuations for the improvements obtained by Feinberg as above outlined, would have been in the increased amounts of $24,000 on the Monroe Street property and $3,500 on the Wells Street property.

---

2. The mailing of this notice of assessment constituted the mailing charge in Counts Two of the indictment upon which Feinberg was found guilty.

3. Included among the Board's functions is power to review of real estate assessments made by the Assessor upon petition by a taxpayer.

4. These two notices were charged as the mailing in Counts Three and Four of the indictment. However, the District Court was not satisfied with the proof of mailing and acquitted Feinberg on those two counts.

## DISCUSSION

*Issue 1:*

Feinberg raises four "sufficiency of the evidence" sub-issues:

1. Does the trial court, in a bench trial, have to find evidence "sufficient to sustain a conviction" (Fed.R.Crim.P. 29(a)) before it can deny a motion for acquittal at the close of the Government's case-in-chief?

2. In a bench trial, does evidence "sufficient to sustain a conviction" mean proof beyond a reasonable doubt as to the defendant's guilt?

3. Was the evidence "sufficient to sustain a conviction" at the close of the Government's case?

4. Was the evidence "sufficient to sustain a conviction" at the close of the entire case?

We conclude these four related issues to be without merit. The District Court, in ruling upon Feinberg's motion for acquittal at the close of the Government's case, observed that "the evidence must be viewed in the light most favorable to the Government," and concluded: "I believe that the evidence that has been submitted is sufficient to go to a jury on all six Counts. So the motion for judgment of acquittal at the close of the Government's case will be denied."

■ The District Court in considering Feinberg's motion adopted the correct standard of taking the Government's evidence in the light or aspect most favorable to the Government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1942); and *United States v. Velasco,* 471 F.2d 112, 115 (7th Cir. 1972). The same standard "applies to a case tried to a District Judge as well as to a case tried to a jury." *United States v. DeNiro,* 392 F.2d 753, 756 (6th Cir. 1968).

Feinberg's attack on the sufficiency of the evidence to sustain his conviction is two pronged:

■ (a) A scheme to defraud was not established, because he could have estab-

lished and be entitled to an assessed valuation and resulting tax reduction for reasons other than the demolition of the buildings. It is immaterial and of no consequence that Feinberg may have been able to acquire a similar reduction in the amount of taxes payable on the properties respectively through some honest means. That Feinberg did acquire the specific deletion of assessed valuations and resulting reduction of taxes on the property by means of fraud and deceit is indisputably established by the record. *See, e. g., United States v. New South Farm & Home Co.,* 241 U.S. 64, 36 S.Ct. 505, 60 L.Ed. 890 (1916).

(b) The documents purporting to be the City of Chicago wrecking permits bearing the date of "Jun 17 1971" were erroneously received in evidence and the testimony of the Government's witness Semrow, a deputy in the Board's office, regarding the documents delivered and representations made to him by Feinberg in connection with Feinberg's over-assessment complaints was "inherently unbelievable."

■ Feinberg's reliance upon the rationale of *United States v. Panczko,* 353 F.2d 676 (7th Cir. 1965); and 2 Morgan, Basic Problems of Evidence, as to the inadmissibility of the wrecking permit documents is misplaced. A perusal of those authorities manifestly reveals that they are inapposite.

■ It is Hornbook law that the District Court, as the trier of the facts, is the sole judge of the credibility of the witnesses and the weight of their respective testimony. This court will not review that determination in light of the District Court's correct determination of the quantum of sufficient evidence at the close of the Government's case. *Glasser, supra* 315 U.S. at 80, 62 S.Ct. at 469, 86 L.Ed. at 704; *United States v. Crumble,* 331 F.2d 228, 230 (7th Cir. 1964); *United States v. Zimmerman,* 326 F.2d 1, 3 (7th Cir. 1963); and *United States v. Bakes,* 354 F.2d 640, 641 (7th Cir. 1966).

■ Included within "sufficiency of the evidence" issues is Feinberg's assertion that

there is no proof of any use of the United States mails in the execution of the alleged scheme to defraud. That assertion is without merit since it is based upon the invalid premise that the mailed items are "innocent" in that they contain no misrepresentations. *See Badders v. United States,* 240 U.S. 391, 394, 36 S.Ct. 367, 368, 60 L.Ed. 706, 708–09 (1916).

■ Feinberg also asserts that the two mailings of the tax bills were not of the type to sustain conviction because:

(a) The mailings were made after the completion of any scheme to defraud; and

(b) The mailings were required by law to be made.

We reject each of those two assertions. Feinberg's reliance upon *United States v. Maze,* 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974); *Kann v. United States,* 323 U.S. 88, 65 S.Ct. 148, 89 L.Ed. 88 (1944); *Parr v. United States,* 363 U.S. 370, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960); and *United States v. Staszcuk,* 502 F.2d 875 (7th Cir. 1974), is wanting under the facts in this case. The indictment charges a scheme to obtain by fraud a reduced tax bill. The end result of the scheme to defraud was the ultimate obtaining through the mails of a statement of an amount of taxes payable in an amount less than the amount that would have been due but for the successful operation of the scheme and the mailings Feinberg caused to be done in the furtherance of the scheme. The agents of the Cook County Tax Collectors Office are not under charge of fraud for the mailing of the tax bills. It was Feinberg's scheme to bring about the official mailing of the fruit of his crime. *See United States v. Smothers,* 435 F.2d 209 (7th Cir. 1970), *cert. denied,* 403 U.S. 906, 91 S.Ct. 2208, 29 L.Ed.2d 681 (1971); and *United States v. Williams,* 424 F.2d 344 (5th Cir. 1970).

■ We conclude that the record as a whole contains ample relevant evidence to support the District Court's findings of guilty beyond a reasonable doubt.

*Issue 2:*

This issue arises from the District Court's admission during the Government's presentation of rebuttal evidence to the effect that during the Fall of 1971, Feinberg endeavored to perpetrate a scheme to defraud the Board nearly identical to that employed in the instant case, *viz.*: original documents, the Board's files reflecting wrecking permits with altered dates for the wrecking of a building at 4635 Lawrence Avenue in Chicago on October 14, 1971, and lay and expert testimony regarding the false documents and representations.

Feinberg urges that the rebuttal evidence was improperly received in that:

(1) The proffered evidence was not relevant on the issue of intent or *modus operandi*; and

(2) Such evidence was inappropriate material for rebuttal.

■ We conclude that the District Court did not err in receiving the challenged evidence. It is well established that evidence of prior criminal acts is admissible on the issue of a defendant's specific criminal intent if (1) the prior act is similar enough and close enough in time to be relevant, (2) the evidence of the prior act is clear and convincing, (3) the probative value of the evidence outweighs the risk of prejudice, and (4) the issue to which the evidence is addressed is disputed by the defendant. *See United States v. Ostrowsky,* 501 F.2d 318 (7th Cir. 1974); *United States v. Hampton,* 457 F.2d 299 (7th Cir.), *cert. denied,* 409 U.S. 856, 93 S.Ct. 136, 34 L.Ed.2d 101 (1972); *United States v. Fierson,* 419 F.2d 1020 (7th Cir. 1969).

■ It is difficult for us to envision a more similar in approach and in the time sequence in placing several schemes to defraud into operation than the incidents charged in the indictment and that involved in the challenged rebuttal evidence. The first element is manifestly satisfied. The requirements that the proffered evidence be clear and convincing and that its prejudicial impact be outweighed by its probative value, Items (2) and (3), *supra,* are amply

satisfied under the test of *Ostrowsky* at 323.

■ Feinberg, during his defense-in-chief, placed into evidence testimony suggesting both that Feinberg had not put the falsified documents in the files, and his intent in seeking the tax reduction was not criminal; thus the dispute of Feinberg's intent became defined. The precise issue to which the evidence of common scheme was relevant was then clearly in dispute and, under the rationale of *United States v. Fearns*, 501 F.2d 486 (7th Cir. 1974), the evidence was admissible.

The Government, following the cautionary rationale of *United States v. Gaus*, 471 F.2d 495 (7th Cir.), *cert. denied*, 412 U.S. 938, 93 S.Ct. 2772, 37 L.Ed.2d 397 (1973); and *United States v. Byrd*, 352 F.2d 570 (2d Cir. 1965), waited until the issue of intent was "sharpened" by Feinberg's evidence and then utilized the vehicle of rebuttal for the introduction of the evidence.

*Issue 3:*

■ 18 U.S.C. § 1341, as applied in the multi-count indictment, is not unconstitutional for vagueness or otherwise. *Badders v. United States*, 240 U.S. 391, 36 S.Ct. 367, 60 L.Ed. 706 (1916); *United States v. Hannigan*, 303 F.Supp. 750 (D.Conn.1969); *United States v. Attaway*, 211 F.Supp. 682 (D.La.1962); and *United States v. Gartman*, 145 F.Supp. 420 (D.Pa.1956).

The District Court's judgment of conviction and sentence entered on June 27, 1975 is affirmed.

AFFIRMED.