UNITED STATES of America

v.

Harry Albert WEILER, Appellant.

No. 71-1821.

United States Court of Appeals,
Third Circuit.

Submitted Jan. 21, 1972.

Decided April 12, 1972.

Mark Schaffer, Defender Association of Philadelphia, Philadelphia, Pa., for appellant.

J. Clayton Undercofler, Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Before ADAMS and JAMES ROSEN, Circuit Judges, and STAPLETON, District Judge.

## OPINION OF THE COURT

STAPLETON, District Judge.

Appellant, Harry Weiler, was found guilty of violating Section 922(g) (1) of Title 18 of the United States Code, and was sentenced to two years probation and fined $500.00. Section 922(g) (1) provides:

"(g) It shall be unlawful for any person—

(1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

\* \* \* \* \* \*

to ship or transport any firearm or ammunition in interstate or foreign commerce."

■ Weiler stipulated below that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year. There was ample evidence to support the jury's conclusion that Weiler transported a hand gun from New Jersey to Pennsylvania on February 9, 1970. Weiler maintains, however, that his conviction must be overturned because the court failed to instruct the jury that the prosecution had the burden of proving beyond a reasonable doubt that he "had knowledge or probability of knowledge of the provisions of Section 922(g) (1) and of its applicability to him." Weiler asserts that the statute, properly construed, as well as the Due Process Clause of the Fifth Amendment of the United States Constitution require that the prosecution shoulder this burden.

At trial the defendant requested, but the court refused to give, instructions to the effect that the prosecution had the burden of proving beyond a reasonable doubt (1) that the defendant "knew that he had been convicted of a crime for which he could be imprisoned for one year or more," and (2) that he "knew that the firearm in question was capable of ejecting a projectile." [1] The court did, however, instruct the jury (1) that the prosecution was required to prove beyond a reasonable doubt the defendant "intentionally" committed the act prohibited by the statute, (2) that a person ordinarily intends the natural and probable consequences of acts knowingly done or knowingly omitted and (3) that an act or failure to act is knowingly done if done voluntarily and not because of mistake or accident. The defendant did not request, and the court did not give, an instruction that the government had the burden of proving beyond a reasonable doubt that the defendant knew his acts were unlawful or otherwise wrongful.

At trial the defendant, although he testified and produced other evidence in his behalf, did not tender any evidence (1) that he did not know he had been convicted of a crime punishable by a year's imprisonment, (2) that he did not know that the gun was capable of expelling a projectile,[2] or (3) that he did not know that it was unlawful for him to transport a gun in interstate commerce.

■ The court below properly refused the two requested instructions. The court did charge that general criminal intent, an intent to do the act which the statute makes unlawful, was required. The general instruction with respect to intent and mistake or accident was all the defendant was entitled to on this point in the absence of any evidence supporting the particularized theories contained in the two requested instructions. United States v. Levinson, 405 F. 2d 971 (6th Cir. 1968); United States v. Kahn, 381 F.2d 824 (7th Cir. 1967); Johnson v. United States, 370 F.2d 495

---

1. 18 U.S.C. § 921 defines firearm as "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm."

2. On these first two points there was strong, convincing and unrebutted evidence to the contrary.

(9th Cir. 1966); Axelbank v. United States, 88 U.S.App.D.C. 147, 189 F.2d 18 (1951).

◼ With respect to appellant's third point, which he stresses on this appeal, evidence was introduced during the trial from which the jury could have concluded that Weiler knew that his conduct was unlawful. The court's charge, however, did not put this issue squarely to the jury.[3] Since the failure to charge on this point would be "plain error" if defendant were right in his contention that specific criminal intent is an essential element of Section 922(g) (1), we must proceed to analyze defendant's argument regarding that statute and the Constitution. United States v. Byrd, 352 F.2d 570 (2nd Cir. 1965).

Section 922(g) (1) of the Gun Control Act[4] does not on its face proscribe any particular state of mind as an element of the offense. Appellant concedes this, but suggests that we should read into the statute the common law concept of an "evil state of mind" and hold that this casts upon the government the burden of proving knowledge on the defendant's part of the unlawfulness of his acts. He relies in this regard on Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952).

The defendant in the Morissette case had been convicted of violating a federal statute making it a crime to embezzle, steal, purloin or knowingly convert to one's own use any "thing of value of the United States."[5] He tendered testimony that he took the shell casings involved only because he thought they were abandoned and with no wrongful or criminal intent.[6] The Supreme Court reversed, noting that the courts "have consistently retained the requirement of [specific criminal] intent in larceny-type cases," and concluding:

"Congress, therefore, omitted any express prescription of criminal intent from the enactment before us in the light of an unbroken course of judicial decision in all constituent states of the Union holding intent inherent in this class of offense, even when not expressed in a statute. Congressional silence as to mental elements in an Act merely adopting into federal statutory law a concept of crime already so well defined in common law and statutory interpretation by the states may warrant quite contrary inferences than the same silence in creating an offense new to general law, for whose definition the courts have no guidance except the Act. Because the offenses before this Court in the Balint and Behrman cases were of this latter class, we cannot accept them as authority for eliminating intent from offenses incorporated from the common law. . . .

. . . [W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed. In such case, absence of contrary direction may be taken as satisfaction with widely accepted definitions, not as a departure from them." 342 U.S. at 261–263, 72 S.Ct. at 249.

---

3. The court charged:
    ". . . It is not necessary for the prosecution to prove the defendant knew that a particular act or a failure to act is a violation of the law unless and until outweighed by evidence in the case of the contrary. The presumption is that every person knows what the law forbids and what the law requires to be done."

4. The statute in question was originally enacted as 15 U.S.C. § 902(e) of the Federal Firearms Act in 1938 and has subsequently been reenacted as 18 U.S.C. § 922(e) of the Omnibus Crime Control and Safe Streets Act of 1968 and as 18 U.S.C. § 922 (g) (1) of the Gun Control Act of 1968.

5. 18 U.S.C. § 641.

6. Thus, in the Morissette case the asserted excuse was not ignorance of a duty imposed by law but rather ignorance of the circumstances which triggered the duty.

Because Section 922(g) (1) of the Gun Control Act does not borrow such "terms of art" or adopt a concept of crime already well defined in common law, we conclude that the present case falls in the same category as United States v. Behrman, 258 U.S. 280, 42 S. Ct. 303, 66 L.Ed. 619 (1922) and United States v. Balint, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922) and that the Act itself must provide the guidance necessary to resolve the issue before us.

The Gun Control Act creates a comprehensive and detailed plan for regulating the conduct of various categories of persons with respect to firearms. Various sections apply to licensed manufacturers, licensed dealers, common carriers, felons, drug addicts, mental defectives and individuals generally. In contrast to the provisions of Section 922(g) (1), Congress specified in numerous sections of the Act that a particular state of mind with respect to knowledge of fact and/or law was necessary before a regulated individual might be convicted of the offenses proscribed.[7] In this context, we cannot attribute to inadvertence the failure of Congress to address itself to state of mind in Section 922(g) (1).[8]

In short, we construe Section 922(g) (1) as a Congressional determination (1) that the transportation of firearms in interstate commerce by persons previously convicted of, or charged with, serious crime presents a serious hazard to the public welfare without regard to whether the one doing the transporting knows of the Gun Control Act, and (2) that criminal sanctions are an appropriate way to cope with the problem.[9] It is not our function to blunt or frustrate the thrust of this Congressional effort in the field of gun control unless the statute trespasses upon constitutionally protected territory. Accordingly, we turn to appellant's argument that Section 922(g) (1), construed as we have done, violates the Due Process Clause of the Fifth Amendment of the United States Constitution.

Appellant does not contest the power of Congress generally to create a criminal offense which does not require specific criminal intent as a prerequisite to conviction. He suggests, however, that this particular statute falls within a class prohibited by the Supreme Court's decision in Lambert v. California, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957).

In that case, the appellant had been convicted of violating a Los Angeles city ordinance which made it unlawful for

---

7. Various sections of the Act, which describe activities for which criminal sanctions are imposed, require "knowledge of or reasonable cause to believe" facts regarding residence [18 U.S.C. § 922(a) (5), 18 U.S.C. § 922(b) (3)]; age [18 U.S.C. § 922(b) (1)]; criminal status [18 U.S.C. § 922(d) (1) and (2)]; drug addiction [18 U.S.C. § 922(d) (3)]; and the mental condition of a transferee of a firearm [18 U.S.C. § 922(d) (4)]. Subsections 922(i) and (j) require knowledge of or reasonable cause to believe that a firearm or ammunition was stolen. [18 U.S.C. § 922(i) and (j).]

A standard of knowledge as to provisions of law is set out in 18 U.S.C. § 922 (b) (2) where knowledge or reasonable cause to believe that a purchase or possession of a firearm or ammunition will not be in violation of state law or published ordinance is specified as a defense. Section 922(f) provides:

"It shall be unlawful for any common or contract carrier to transport or deliver in interstate or foreign commerce any firearm or ammunition with *knowledge or reasonable cause to believe that the shipment, transportation, or receipt thereof would be in violation of the provisions of this chapter*." (Emphasis supplied)

8. While the difference in the terminology used in the various subsections of Section 922 might indicate that Congress did not intend general criminal intent to be an element of Section 922(g) (1) and that one might be convicted even though mistaken as to whether, for example, a particular instrument was capable of propelling a projectile, in light of the court's charge below, we are not called upon to decide that question.

9. Cases from other Courts of Appeal provide some support for this construction. United States v. Quiroz (United States v. Alsup) (449 F.2d 583, 9th Cir. 1971); Braswell v. United States, 224 F.2d 706 (10th Cir. 1955).

"any convicted person" to be or remain in Los Angeles for a period of more than five days without registering with the police. The court assumed "that appellant had no actual knowledge of the requirement that she register under this ordinance, as she offered proof of this defense which was refused." 355 U.S. at 227, 78 S.Ct. at 242. The question, accordingly, was "whether a registration act of this character violates due process where it is applied to a person who has no actual knowledge of his duty to register, and where no showing is made of the probability of such knowledge." 355 U.S. at 227, 78 S.Ct. at 242. The Court answered this question in the affirmative.

Justice Douglas, writing for the majority, analyzed the problem as follows:

"We do not go with Blackstone in saying that 'a vicious will' is necessary to constitute a crime, 4 Bl.Comm. * 21, for conduct alone without regard to the intent of the doer is often sufficient. There is wide latitude in the lawmakers to declare an offense and to exclude elements of knowledge and diligence from its definition. See Chicago, B. & Q. R. Co. v. United States, 220 U.S. 559, 578, 31 S.Ct. 612, 617, 55 L.Ed. 582. But we deal here with conduct that is wholly passive— mere failure to register. It is unlike the commission of acts, or the failure to act under circumstances that should alert the doer to the consequences of his deed. . . .

"Registration laws are common and their range is wide. Cf. Bryant v. Zimmerman, 278 U.S. 63, 49 S.Ct. 61, 73 L.Ed. 184; United States v. Harriss, 347 U.S. 612, 74 S.Ct. 808, 98 L. Ed. 989; United States v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754. Many such laws are akin to licensing statutes in that they pertain to the regulation of business activities. But the present ordinance is en-

tirely different. Violation of its provisions is unaccompanied by any activity whatever, mere presence in the city being the test. Moreover, circumstances which might move one to inquire as to the necessity of registration are completely lacking. At most the ordinance is but a law enforcement technique designed for the convenience of law enforcement agencies through which a list of the names and addresses of felons then residing in a given community is compiled. The disclosure is merely a compilation of former convictions already publicly recorded in the jurisdiction where obtained. Nevertheless, this appellant on first becoming aware of her duty to register was given no opportunity to comply with the law and avoid its penalty, even though her default was entirely innocent. . . . We believe that actual knowledge of the duty to register or proof of the probability of such knowledge and subsequent failure to comply are necessary before a conviction under the ordinance can stand. . . ." 355 U.S. at 228–229, 78 S.Ct. at 242.

The *Lambert* decision rested on three factors: (1) the crime was one of omission, not commission, (2) the situation to which the ordinance addressed itself was not such as might move one to inquire as to the applicable law and (3) the purpose of the statute was solely to compile a list which might assist law enforcement agencies. Because of the absence of each of these factors here, appellant's conviction does not violate any of the considerations of fundamental fairness which moved the Court to act as it did in the *Lambert* case.

While a line between offenses of commission and omission may sometimes be difficult to draw [10] and, when drawn, may not always be a satisfactory yardstick,[11] the distinction is nevertheless a legitimate consideration in deter-

10. See United States v. Mancuso, 420 F.2d 556, 558 (2nd Cir. 1971) ; Hughes, Criminal Omissions, 67 Yale L.J. 590, 597–599 (1958).

11. See Lambert v. California, 355 U.S. 225, 230, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957) (Frankfurter, Harlan and Whittaker, JJ., dissenting). United States v. Mancuso,

mining the perimeters of the Due Process Clause. Section 922(g) (1), as construed and applied by the court below, imposes criminal sanctions only for the intentional doing of an act—the transporting of a firearm across state lines by one convicted of, or indicted for, a serious crime. Accordingly, it presupposes a situation, unlike that of merely being present in Los Angeles, where the defendant's mind is specifically and consciously addressed to the prohibited conduct.[12] That prohibited conduct, again unlike presence in a given city, is one which by its nature suggests the possibility of governmental regulation. In our judgment, the common community understanding regarding the potential hazards inherent in dealing with firearms and the common community knowledge that disabilities may follow from conviction of a serious crime preclude any argument that it is unconscionable to impose the burden of inquiry upon a felon who intends to transport a firearm and to penalize him if he proceeds to act without ascertaining the applicable law.[13]

Finally, the statute involved here is unlike the ordinance involved in the *Lambert* case. There, the court's holding did not encourage ignorance of the law in an area where knowledge of the law and conformance therewith was critical to the public welfare. The Los Angeles ordinance did not constitute a legislative finding that the presence of unregistered felons in the city posed a greater public threat than the presence of registered felons. It was merely a measure for the convenience of law enforcement authorities. Here the situation is quite different. Congress has determined that the interstate transportation of firearms by those convicted or charged with serious crime itself creates a serious hazard to the public welfare. Its purpose was to prohibit this conduct, not to encourage registration prior to engaging in it.

As the Supreme Court in the *Morissette* case observed, the association of criminal sanctions with wrongful intent is deeply embedded in the common law. In *Lambert*, that court did "not go with Blackstone in saying that 'a vicious will' is necessary to constitute a crime," however, because there are competing concerns to be weighed. As one scholar has put it:

"While the 'ignorance of law is no excuse' maxim may be rationalized with the *mens rea* concept, it should be frankly recognized that the former is in the nature of an exception to the basic principles upon which the latter is grounded. Mere logic would seem to indicate that the maxim should be abrogated entirely. But logic is the servant of the law, not its master; and logical abstractions must give way in the presence of overbalancing considerations

\* \* \* \* \* \*

. . . [I]f such ignorance [of the law] were available as a defense in every criminal case, this would be a constant source of confusion to juries, and it would tend to encourage ignorance at a point where it is peculiarly important to the state that knowledge should be as widespread as is reasonably possible. In the language of one of the giants of the profession, this is a point at which justice to the individ-

420 F.2d 556, 558 (2nd Cir. 1971) ; Mueller, On Common Law Mens Rea, 43 Minn. L.Rev. 1043, 1104 (1958).

12. See Hughes, Criminal Omissions, 67 Yale L.J. 590, 600 (1958).

13. See Hart, The Aims of the Criminal Law, 23 Law & Contemp.Prob., 401, 417, 421 (1958).

Appellant, with some justification, relies on United States v. Mancuso, 420 F.2d 556 (2nd Cir. 1971) as support for a con-

clusion contrary to the one we here reach. The court's conclusion in that case is a debatable one. Compare Reyes v. United States, 258 F.2d 774, 783–785 (9th Cir. 1958). In any event, however, the *Mancuso* case involved a statute requiring the registration, prior to international travel, of persons previously convicted of narcotics offenses. In our judgment, a statute prohibiting the interstate transportation of firearms by persons convicted of crime falls into a materially different category.

ual is rightly outweighed by the larger interests on the other side of the scales.' [60]

60. Holmes, The Common Law (1881) 48." [14] Perkins, Ignorance and Mistake in Criminal Law, 88 Pa.L. Rev. 35, 40–41 (1939).

 Application of the Due Process Clause of the Fifth Amendment requires a similar balancing of interests in circumstances like the present one. United States v. Balint, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922). United States v. Dotterweich, 320 U.S. 277, 648 S.Ct. 134, 88 L.Ed. 48 (1943). In the *Dotterweich* case Justice Frankfurter made the following observations in the context of a federal statute making it a crime to introduce into interstate commerce any drug that is adulterated or misbranded:

". . . The prosecution to which Dotterweich was subjected is based on a now familiar type of legislation whereby penalties serve as effective means of regulation. Such legislation dispenses with the conventional requirement for criminal conduct—awareness of some wrongdoing. In the interest of the larger good it puts the burden of acting at hazard upon a person otherwise innocent but standing in responsible relation to a public danger. United States v. Balint, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604.

. . .

\* \* \* \* \* \*

. . . Hardship there doubtless may be under a statute which thus penalizes the transaction though consciousness of wrongdoing be totally wanting. Balancing relative hardships, Congress has preferred to place it upon those who have at least the opportunity of informing themselves of the existence of conditions imposed

for the protection of consumers before sharing in illicit commerce, rather than to throw the hazard on the innocent public who are wholly helpless." The scales here, as in *Balint* and *Dotterweich*, are weighted differently than in the *Lambert* case.

 Appellant's conviction is consistent with the Gun Control Act and the Fifth Amendment to the United States Constitution. The judgment below is affirmed.

14. Holmes' explanation of the rule was:
   "Public policy sacrifices the individual to the general good. It is desirable that the burden of all should be equal, but it is still more desirable to put an end to robbery and murder. It is no doubt true that there are many cases in which the criminal could not have known that he was breaking the law, but to admit the excuse at all would be to encourage ignorance where the law-maker has determined to make men know and obey, and justice to the individual is rightly outweighed by the larger interests on the other side of the scales." Holmes, The Common Law 41, 48 (1923).