CASEMIRO GARCIA *v.* STATE OF INDIANA.

[No. 871S239. Filed February 27, 1973. Rehearing denied April 26, 1973.]

*Patrick N. Ryan, Jack B. Welchons, Ryan & Welchons,* and *Alan R. Diodore,* all of Marion, for appellant.

*Theodore L. Sendak,* Attorney General, *William D. Bucher,* Deputy Attorney General, for appellee.

GIVAN, J.—Appellant was charged by affidavit with the crime of carrying pistols without a license. Trial by jury resulted in a verdict of guilty. The appellant was sentenced to the Indiana State Prison for a period of three years.

The record discloses the following facts:

On November 16, 1969, Grant County Deputy Sheriff Stephenson went to 1104 S. McClure in Marion, Indiana, to serve an attachment on appellant. When Stephenson arrived, the appellant had already left the address but was pursued by Stephenson and three patrolmen from the Marion Police Department, and after a brief chase was stopped. Appellant was searched for weapons. Two loaded pistols were removed from his person.

There seems to be some difference of opinion between the police officers as to the amount of force used in making the arrest and the search of the appellant. In any event there appears to have been an altercation of some sort between the officers and the appellant at the time of his arrest resulting in an injury to appellant's eye.

At the time of his arrest, appellant was employed in Coldwater, Michigan, where he lived in a motel during the week. On weekends he returned to the home of one Helen Purvis with whom he lived in Marion. On the date of his arrest, appellant had been ordered out of Miss Purvis' home.

During the course of the trial, the appellant attempted to introduce evidence to the effect that the injury he sustained to his eye during the arrest resulted in the removal of his eye. The State objected to testimony concerning the eye injury as being irrelevant to the charge against the appellant. The State's objection was sustained by the trial court.

Appellant first argues the verdict of the jury is not sustained by sufficient evidence and is contrary to law. It is appellant's position that evidence showed him to be a resident of Michigan and, therefore, he does not come within the statute forbidding the carrying of weapons without a license.

In the first place, it does not appear the jury was bound to find from the evidence that the appellant was a Michigan resident. There was just as much evidence before the jury that he was in fact an Indiana resident. However, if we assume for the sake of argument that the appellant was in fact a resident of the State of Michigan, it does not follow that he was automatically excluded from the statute. IC 1971, 35-23-4-3, Burns' Ind. Stat. Ann., 1956 Repl., § 10-4736 reads as follows:

"No person shall carry a pistol in any vehicle or on or about his person, except in his place of abode or fixed place of business, without a license therefor as hereinafter provided. [Acts 1935, ch. 63, § 3, p. 159.]"

Exceptions to the above statute are found in IC 1971, 35-23-4-4, Burns' Ind. Stat. Ann., 1972 Supp., § 10-4737 which reads as follows:

"The provisions of the preceding section [§ 10-4736] shall not apply to marshals, sheriffs, prison or jail wardens or their deputies, judicial officers, policemen or other law enforcement officers, or policemen as defined in IC 1971, 19-1-3 [§§ 48-6120b, 48-6120c], who have been retired by action of the pension board. Provided, That any such officer shall be subject to and follow the provisions of sec. 5 [§ 10-4738] of this chapter, except that no fee shall be paid for such permit. Nor shall the provisions of the preceding section [§ 10-4736] apply to members of the army, navy or marine corps of the United States or of the national guard or organized reserves when on duty, or to the regularly enrolled members of any organization duly authorized to purchase or receive such weapons from the United States or from this state, provided such members are at or are going to or from their place of assembly or target practice, or to officers or employees of the United States duly authorized to carry concealed pistols, or to employees of express companies when engaged in company business, or to any person engaged in the business of manufacturing, repairing or dealing in firearms or the agent or representative of any such person having in his possession, using or carrying a pistol in the usual or ordinary course of such business, or to any person while carrying a pistol unloaded and in a secure wrapper from the place of purchase to his home or place of business, or to a place of repair or back to his home

or place of business or in moving from one [1] place of abode or business to another. [Acts 1935, ch. 63, § 4, p. 159; 1937, ch. 173, § 1, p. 879; 1972, P. L. 227, § 1, p. 1015.]"

There is nothing in the evidence in this case to indicate that appellant comes within any of the specified exceptions. There is nothing in the statute that exempts residents of another state from the requirement of obtaining a license.

Appellant, however, argues that additional implied exceptions arise from IC 1971, 35-23-4-5(1), Burns' Ind. Stat. Ann., 1972 Supp., § 10-4738(1) which provides as follows:

"(1) A person desiring a license to carry a pistol shall apply to the chief of police or corresponding police officer of the municipality in which he resides.

"If that municipality has no such officer, or if the applicant does not reside in a municipality, he shall apply to the sheriff of the county in which he resides, or if he is a resident of another state and has a regular place of business or employment in this state, then to the sheriff of the county in which he has a regular place of business or employment. The officer to whom the application is made shall ascertain concerning the applicant his name, address, length of residence in the community, race, citizenship, age, criminal record, if any, occupation, place of business, character, reputation, experience with firearms and reason for desiring a license. The desire to engage in target practice is a proper reason.

The officer shall then make such further investigation as he deems necessary and determine whether or not he shall recommend the issuance of the license. If his recommendation is against such issuance, he shall make a written report thereof stating his reasons and file the same along with the application with the superintendent of state police. If the officer's action on the application is favorable, he shall forward the application along with his favorable recommendation to the superintendent of state police. The superintendent of state police shall make whatever further investigation he deems necessary and shall issue to the applicant a qualified or unlimited license to carry a pistol for not more than two [2] years from the date of issue, if it appears that the applicant has a proper reason for

carrying a pistol and is of good character and reputation and a suitable person to be so licensed."

Appellant cites *Kelley* v. *State* (1954), 233 Ind. 294, 119 N. E. 2d 322, for the proposition that criminal statutes should be strictly construed against the State. He argues that since no provision exists for the licensing of out of state travelers in Indiana, they are exempt from the licensing requirement. In the *Kelley* case this Court held at page 298:

> "The rule of strict construction means that such statutes will not be enlarged by implication or intendment beyond the fair meaning of the language used, and will not be held to include offenses and persons other than those which are clearly described and provided for although the court may think the legislature should have made them more comprehensive."

The clear wording of the statute applies to all persons within the jurisdiction of Indiana. This Court may not alter a statute to exclude a group any more than it can alter a statute to include a group. Such a function is within the discretion of the General Assembly. We, therefore, hold the appellant did not come within the exceptions in the statute, and that he was clearly required to have a license to carry pistols on his person within the state of Indiana.

Appellant's only other contention of error is that the trial court erred in excluding evidence concerning the injury he received to his eye at the time of his arrest. He contends that evidence of the loss of his eye should have been allowed to mitigate any possible sentence on a finding of guilty. In support of this contention he cites *Kistler* v. *State* (1876), 54 Ind. 400. In that case the Court held that evidence that the accused had served eighteen months in jail on the same offense under a previous trial was improperly excluded. More recent cases have followed this same general principle concerning time previously served by a person on trial for the second time on the same offense. See *North Carolina* v. *Pearce* (1969), 395 U.S. 711, 89 S. Ct. 2072, 23

L. Ed 2d 656. We hold, however, that appellant does not come within the rule in these cases. The fact that he may have lost an eye as a result of his altercation with the police officers, and the further possibility that such altercation was a result of police brutality rather than reasonable arrest tactics should in no way serve as mitigation for the commission of an offense wholly unrelated to the possible altercation with the officers. Appellant had violated the firearms statute prior to his arrest, and the manner in which the arrest was accomplished had no bearing on that violation or the accumulation of evidence for the prosecution thereof. If appellant's contentions are true, he may resort to civil courts for redress, but the facts would not justify mitigation of the offense for the violation of the firearms act.

The trial court is affirmed.

Arterburn, C.J., Hunter and Prentice, JJ., concur; DeBruler, J., concurs in result with opinion.

## OPINION CONCURRING IN RESULT

DeBruler, J.—It was the duty of the jury in this case, upon finding the appellant guilty of carrying a pistol without a license, to fix the punishment. IC 1971, 35-8-2-1, being Burns § 9-1819. The punishment prescribed by statute for this offense is a determinate term of imprisonment of not less than one nor more than ten years, or a fine of not more than one thousand dollars. IC 1971, 35-23-4-14, being Burns § 10-4747.[1] In my view, evidence that the appellant lost an eye at the time of the arrest was admissible. It was not admissible on the issue of whether the appellant was guilty or not, but it was admissible and the jury was entitled to hear it, because it would assist the jury in discharging its duty to fix punishment. *Kistler* v. *State* (1876), 54 Ind. 400; *Blue* v. *State* (1946), 224 Ind. 394, 67 N. E. 2d 377; *Wilson* v. *State* (1961),

---

1. Under the proposed Indiana Code of Criminal Procedure the jury does not fix fines or punishment as it presently does. § 35-6.1-5-1.

247 Ind. 680, 221 N. E. 2d 347. The physical impairment to the appellant as a result of the injury received at the time of arrest should be considered by the authority fixing the term of punishment. It is a detrimental consequence flowing to the appellant from his criminal act. One of the purposes of imprisonment intended to serve is the deterrence of future criminal conduct. While admittedly not the case here, surely evidence of a physical impairment would be admissible if it were of such a nature as to render a defendant incapable of repeating the crime for which he is convicted.

I believe it was error to exclude appellant's evidence. However, witnesses did testify at trial without objection that the appellant was struck by police at the time of the arrest and that appellant received an eye injury and that shortly after the receipt of the injury, appellant's eye was surgically removed. The error of the trial court was therefore harmless.

NOTE.—Reported in 292 N. E. 2d 810.