*Opposed*—None.

STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. LEONARD E. HATCH, DEFENDANT-RESPONDENT.

Argued September 26, 1973—Decided December 28, 1973.

*Mr. Fred H. Kumpf,* Deputy Attorney General, argued the cause for the appellant *(Mr. George F. Kugler, Jr.,* Attorney General of New Jersey, attorney).

*Mr. Carl R. Lobel,* Assistant Deputy Public Defender, argued the cause for the respondent *(Mr. Stanley C. Van Ness,* Public Defender, attorney).

The opinion of the Court was delivered by

JACOBS, J. The Appellate Division affirmed (122 *N. J. Super.* 538 (1973)) the Law Division's judgment acquitting the defendant of the charge that he unlawfully possessed a rifle and shotgun in violation of *N. J. S. A.* 2A:151–41. 118 *N. J. Super.* 96 (1972). We granted certification, not with the view of interfering with the Law Division's factual conclusions or its direction of acquittal, but for the purpose of reviewing the legal principles affecting nonresidents who possess firearms while within or passing through New Jersey.

63 *N. J.* 257 (1973) ; *cf. State v. Saulnier,* 63 *N. J.* 199, 201, 209 (1973).

The defendant Leonard E. Hatch, a resident of Erving, Massachusetts, was driving in New Jersey on his way to Philadelphia, Pennsylvania. He was stopped for a traffic violation on Route 22 in the Bound Brook area. The police officer saw a rifle and shotgun under some clothing in the rear seat of the defendant's car. The defendant told the officer that he was traveling from Massachusetts to Pennsylvania in the hope of finding employment in the heavy construction field and that he had taken the guns with him for hunting and related sporting use. He had a Massachusetts hunting license, was a member of a Massachusetts gun club, and had been issued a firearm identification card in accordance with Massachusetts law. He had no New Jersey "firearms purchaser identification card" (*N. J. S. A.* 2A:151–41(b)) and his firearms were not "in a closed and fastened case, gunbox, securely tied package, or locked in the trunk of the automobile" (*N. J. S. A.* 2A:151–42(c)). He testified that his mode of carrying the firearms complied with Massachusetts law and that he was unaware of any further legal requirement on his part in passing through New Jersey.

The defendant was indicted for unlawful possession of the rifle and shotgun in violation of *N. J. S. A.* 2A:151–41 and, after trial, the jury returned a verdict of guilty. However, during the trial the judge had reserved decision on a motion for acquittal and thereafter he entered an order setting aside the jury's verdict and acquitting the defendant in accordance with the provisions of *R.* 3:18–2. In his reported opinion the trial judge seemed to take the broad position that in the absence of notice or knowledge of further requirement by New Jersey, a nonresident passing through New Jersey may possess a handgun or other firearm so long as his possession is not violative of the law of his own home state. 118 *N. J. Super.* at 101–103. He, along with the Appellate Division (122 *N. J. Super.* at 540), cited *Lambert v. Cali-*

*fornia*, 355 *U. S.* 225, 78 S. Ct. 240, 2 *L. Ed. 2d* 228 (1957), apparently in support of the thought that the federal constitution may prohibit a contrary legislative approach. We hold a different view. See *United States v. Freed*, 401 *U. S.* 601, 91 S. Ct. 1112, 28 *L. Ed. 2d* 356, *rehearing denied*, 403 *U. S.* 912, 91 S. Ct. 2201, 29 *L. Ed. 2d* 690 (1971) ; *United States v. International Min. & Chem. Corp.*, 402 *U. S.* 558, 91 S. Ct. 1697, 29 *L. Ed. 2d* 178 (1971) ; *cf. Garcia v. State*, —— *Ind.* ——, 292 *N. E. 2d* 810 (1973) ; *People v. Perez*, 67 *Misc. 2d* 911, 325 *N. Y. S. 2d* 183 (*Co. Ct.* 1971) ; see also *United States v. Weiler*, 458 *F. 2d* 474 (3 Cir. 1972) ; *Galvan v. Superior Court*, 70 *Cal. 2d* 851, 76 *Cal. Rptr.* 642, 653, 452 *P. 2d* 930, 941 (1969).

In *Lambert* the Court dealt with a city ordinance which made it unlawful for any person convicted of a felony to remain within the city limits for more than five days without registering with the police; it held that the ordinance violates due process when applied to a person who has no notice or knowledge of his duty to register. 355 *U. S.* at 227, 78 S. Ct. 240, 2 *L. Ed. 2d* at 231. In the later *Freed* case the Court dealt with a provision in the National Firearms Act which declares it unlawful to receive or possess an unregistered firearm. The defendant was indicted for possession of unregistered hand grenades but the trial court dismissed the indictment on the ground, *inter alia*, that it did not allege scienter. In reversing the dismissal and in holding that scienter was not required, the Court differentiated *Lambert* and determined that Congress had constitutionally declared that possession of the unregistered firearm is unlawful even though the defendant has no notice or knowledge of the lack of registration. 401 *U. S.* at 608–610, 91 S. Ct. 1112, 28 *L. Ed. 2d* at 362–363.

In *United States v. International Min. & Chem. Corp.*, *supra*, 402 *U. S.* 558, 91 S. Ct. 1697, 29 *L. Ed. 2d* 178, the Department of Transportation had adopted regulations governing the transportation of corrosive liquids and other dan-

gerous articles. The defendant had shipped sulfuric and other dangerous acids without complying with the regulations. In holding that the defendant could not assert lack of knowledge of the regulations by way of defense the Court, after referring to *Freed, supra,* 401 *U. S.* 601, 91 S. Ct. 1112, 28 *L. Ed. 2d* 356, and *United States v. Balint,* 258 *U. S.* 250, 42 S. Ct. 301, 66 *L. Ed.* 604 (1922) where lack of notice or knowledge of illegality was held no defense to a charge of unlawful narcotics sale, had this to say:

> In Balint the Court was dealing with drugs, in Freed with hand grenades, in this case with sulfuric and other dangerous acids. Pencils, dental floss, paper clips may also be regulated. But they may be the type of products which might raise substantial due process questions if Congress did not require, as in Murdock, "mens rea" as to each ingredient of the offense. But where, as here and as in Balint and Freed, dangerous or deleterious devices or products or obnoxious waste materials are involved, the probability of regulation is so great that anyone who is aware that he is in possession of them or dealing with them must be presumed to be aware of the regulation. 402 *U. S.* at 564–565, 91 S. Ct. at 1701–1702, 29 *L. Ed. 2d* at 183.

In *United States v. Weiler, supra,* 458 *F. 2d* 474, the court pointed out that in *Lambert* the crime was one of omission rather than commission, the situation was one in which inquiry as to the applicable law was unlikely, and the purpose of the ordinance was simply to compile a list which might ultimately assist law enforcement agencies. 458 *F. 2d* at 478. In contrast, statutes dealing with gun control are concerned with acts of commission, in situations where regulations abound and inquiries are likely, and where the purposes are to insure the public safety and protect against current acts and threats of violence. See *Burton v. Sills,* 53 *N. J.* 86 (1968), *appeal dismissed,* 394 *U. S.* 812, 89 S. Ct. 1486, 22 *L. Ed. 2d* 748 (1969) ; *Siccardi v. State,* 59 *N. J.* 545 (1971). While there is much to be said in favor of the wide recognition of lack of scienter as a defense *(State v. Hudson County News Co.,* 35 *N. J.* 284, 290–295 (1961) ; *State v. De Meo,* 20 *N. J.* 1, 13–14 (1955) ), there are fields

in which the dangers are so high and the regulations so prevalent that, on balance, the legislative branch may as a matter of sound public policy and without impairing any constitutional guarantees, declare the act itself unlawful without any further requirement of mens rea or its equivalent. See *United States v. Freed, supra,* 401 *U. S.* 601, 91 S. Ct. 1112, 28 *L. Ed. 2d* 356; *United States v. International Min. & Chem. Corp., supra,* 402 *U. S.* 558, 91 S. Ct. 1697, 29 *L. Ed. 2d* 178. Gun control is clearly such a field and consequently New Jersey's regulations may, to the extent that the Legislature so intended, properly be applied to nonresidents as well as residents, without regard to notice or knowledge on their part. See *Garcia v. State, supra, Ind.,* 292 *N. E. 2d* 810; *People v. Perez, supra,* 67 *Misc. 2d* 911, 325 *N. Y. S. 2d* 183.

In *Garcia, supra,* the court held that Indiana's statutory requirement for handgun permits applied equally to nonresidents and residents. 292 *N. E. 2d* at 811–812. In *Perez, supra,* the court held that New York's statutory requirement for handgun permits was fully applicable to the defendant, a nonresident who was traveling through New York on his way to Massachusetts when he was stopped by a police officer and was found to have a handgun in his car. The defendant did not question the right of New York to apply its gun control regulations to nonresidents within or passing through its borders. See *South Carolina State Highway Dept. v. Barnwell Bros.,* 303 *U. S.* 177, 58 S. Ct. 510, 82 *L. Ed.* 734 (1938); *Neeld v. Giroux,* 24 *N. J.* 224, 228 (1957); *cf. Soap and Detergent Association v. City of Chicago,* 357 *F. Supp.* 44, 47 (*N. D. Ill.* 1973). But he did contend, unsuccessfully, that New York's statute was infirm in that it failed to set up a permit procedure for nonresidents though it had a suitable one for residents. 325 *N. Y. S. 2d* at 185–186. In this connection it is to be noted that New Jersey's statute clearly contemplates that applications for handgun permits and for firearms purchaser identification cards may be made

by nonresidents as well as residents. *N. J. S. A.* 2A:151–44.1; *N. J. S. A.* 2A:151–34.

In the light of all of the foregoing we come now to the proper interpretation of the pertinent provisions of our Gun Control Law. *L.* 1966, *c.* 60; *N. J. S. A.* 2A:151–1 *et seq.; Burton v. Sills, supra,* 53 *N. J.* 86; *Siccardi v. State, supra,* 59 *N. J.* 545. Though the statute is not without its obscurities, the overriding legislative goal may fairly be gathered from its history and terms and our judicial function is to effectuate that goal to the extent permitted by the legislative language. See *J. C. Chap. Prop. Owner's &c. Assoc. v. City Council,* 55 *N. J.* 86, 100 (1969); *Levin v. Tp. Committee of Tp. of Bridgewater,* 57 *N. J.* 506, 515, *appeal dismissed,* 404 *U. S.* 803, 92 S. Ct. 58, 30 *L. Ed. 2d* 35 (1971). So far as the carrying of handguns by individuals in their cars or on their persons along the highways is concerned, the legislative purpose is entirely evident; apart from exceptions not pertinent here (*N. J. S. A.* 2A:151–42; *N. J. S. A.* 2A:151–43) that conduct is clearly forbidden unless the person carrying the handgun has a permit issued in accordance with *N. J. S. A.* 2A:151–41, 44. *Cf. State v. Johnson,* 125 *N. J. Super.* 344, 347–348 (*App. Div.* 1973). Recognizing the high dangers incident to such carrying, the permit is not to issue in the absence of an affirmative showing of need. *N. J. S. A.* 2A:151–44; *Siccardi v. State, supra,* 59 *N. J.* 545; *Reilly v. State,* 59 *N. J.* 559 (1971); *In re Application of "X",* 59 *N. J.* 533 (1971).

When dealing with the carrying of handguns we find nothing in the statute which suggests any flexibility or any intent to exclude nonresidents within or passing through New Jersey from the strict permit requirement. However, we do find somewhat less strict legislative treatment of guns used in hunting. When Governor Hughes signed the bill which became *L.* 1966, *c.* 60 (*N. J. S. A.* 2A:151–1 *et seq.*) he pointed out that, while its weapons control provisions would strengthen the hand of law enforcement in combatting violence, they would not preclude New Jersey from being a

"sportsman's State" where "the hunter is still welcome." *N. J. S. A.* 2A:151–42 provides, in substance, that nothing in the statutory provision calling for a permit or identification card (*N. J. S. A.* 2A:151–41, 44) shall be construed to prevent any person with a hunting license from transporting a firearm for the purpose of hunting provided, *inter alia,* that "the firearm is unloaded and contained in a closed and fastened case, gunbox, securely tied package, or locked in the trunk of the automobile." *N. J. S. A.* 2A:151–42(c). Under this provision persons with hunting licenses may carry guns used by them for hunting provided the guns are securely concealed while being transported; indeed they may do so not only without holding permits but even without holding firearms purchaser identification cards so long as they did not purchase or receive the guns in New Jersey subsequent to the 1966 passage of the Gun Control Law. See *N. J. S. A.* 2A:151–32; *cf. State v. D'Orsi,* 113 *N. J. Super.* 527, 530–531 (*App. Div.*), *certif. denied,* 58 *N. J.* 335 (1971).

▮ Although when read literally (*cf. Lloyd v. Vermeulen,* 22 *N. J.* 200, 205 (1956)) the statutory terminology presents difficulties, it is evident that the Legislature sought, as a matter of policy, to prohibit the transportation by licensed hunters of guns to hunting areas except in the mode specifically described in *N. J. S. A.* 2A:151–42. The open handling or display of rifles and shotguns by hunters while traveling to hunting areas presents dangers that the Legislature sought to avoid even where permits and identification cards have been obtained. *Cf. State v. Neumann,* 103 *N. J. Super.* 83, 86–87 (Cty. Ct. 1968). Nothing in the statute suggests that, while the Legislature restricted resident hunters, it placed no restriction on nonresident hunters while within or traveling through the State. On the contrary, the likelihood appears that the precautions the Legislature designedly took with respect to the mode of transportation of firearms by licensed hunters were intended to apply indiscriminately to all within the State whether residents or nonresidents traveling through.

██ We assume that the defendant Hatch had fulfilled the licensing and other requirements of his home state when he placed the guns in his car and set out for Pennsylvania to obtain employment and do some hunting. When he came into New Jersey, however, he subjected himself to New Jersey's gun control regulations. While we doubt that the Legislature ever contemplated that one in his situation as aforedescribed would be called upon to hold a New Jersey purchaser identification card for the rifle and shotgun, he was at least obliged to fulfill its pertinent requirement with respect to their proper encasing as set forth in *N. J. S. A.* 2A:151–42(c). That requirement was entirely reasonable and did not unduly or unfairly burden interstate travel. The Law Division, in acquitting the defendant, stressed that he could not "be expected to know, or to ascertain" the New Jersey requirement. 118 *N. J. Super.* at 102. The New Jersey administrative authorities might well have taken suitable precautions to publicize the requirement so that licensed hunters who planned to travel through with firearms in their cars would presumably have had actual notice or knowledge; but as we have already indicated, there is no constitutional infirmity in applying New Jersey's statutory requirement even in the absence of notice or knowledge. See *United States v. Freed, supra,* 401 *U. S.* 601, 91 S. Ct. 1112, 28 *L. Ed. 2d* 356; *United States v. International Min. & Chem. Corp., supra,* 402 *U. S.* 558, 91 S. Ct. 1697, 29 *L. Ed. 2d* 178; *United States v. Weiler, supra,* 458 *F. 2d* 474; *cf. State v. De Meo, supra,* 20 *N. J.* at 8–11; *Morss v. Forbes,* 24 *N. J.* 341, 358 (1957); *State v. Labato,* 7 *N. J.* 137, 149 (1951).

██ Both the Law Division and the Appellate Division were evidently satisfied that the guns were intended for hunting and related sporting use as the defendant had testified and that he had acted in good faith and without notice or knowledge of New Jersey's requirement. Though they were in error in concluding that his lack of notice or knowledge was a legal defense, there had been no controlling judicial pronouncement and the Law Division's acquittal of the de-

fendant was understandable. As was indicated in the opening paragraph of this opinion, we did not certify with the view of interfering with the acquittal which we shall now let stand. Prospectively, however, the principles set forth herein shall, in the absence of legislative clarification or modification, fully control the possession and transportation of firearms not only by residents but also by nonresidents within or passing through New Jersey.

Affirmed.

*For affirmance*—Justices JACOBS, HALL, SULLIVAN, PASHMAN and CLIFFORD—5.

*For reversal*—None.