Daniel SCALPELLI, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 07A04–0406–CR–310.

Court of Appeals of Indiana.

May 26, 2005.

Transfer Denied Aug. 11, 2005.

Teresa D. Harper, Bloomington, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Justin F. Roebel, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Daniel Scalpelli appeals his conviction for Disturbing a Cemetery Without a Permit,[1] a class A misdemeanor. Scalpelli presents the following issue for review: Did the trial court err as a matter of law in

---

1. Ind.Code Ann. § 14–21–1–26.5 (West, PREMISE through 2004 2nd Regular Sess.). Although the charging information against Scalpelli lists this offense as disturbing a cemetery without a permit, the word "permit" does not appear in the statute; rather, the statute refers only to a development plan.

determining he violated I.C. § 14–21–1–26.5? [2]

We affirm.

The facts most favorable to the judgment demonstrate that in the summer of 2000, Scalpelli bought a piece of land with the intention of building a residence. Before purchasing the land, Scalpelli's realtor informed him that the property contained the historic Fleetwood Cemetery and Scalpelli located the cemetery during a walk-through of the property. Thereafter, Scalpelli bought the land and subsequently obtained a Local Improvement Permit and Sewage Disposal Permit in order to begin construction of his residence. Scalpelli did not, however, obtain a development plan from the Department of Natural Resources (DNR) to disturb the ground within a hundred feet of a cemetery as required by I.C. § 14–21–1–26.5.

In the late summer of 2001, Scalpelli began construction of his residence: he installed a driveway, laid down a block foundation, and installed a septic system. Scalpelli also expanded the pond on his property in order to create a lake well that would provide running water to his residence. This process entailed removing dirt from the pond and placing it in the surrounding area. Because of lack of space, Scalpelli piled some of the dirt on the gravesite, which was located near the pond. Scalpelli also removed all eight gravestones from the cemetery, created a map indicating the gravestones' original locations, and placed the gravestones behind the foundation of the house. After the concrete for the foundation was poured, the foundation itself was ninety-nine feet and nine inches from the cemetery. The septic system's underground finger was seventeen feet from the cemetery.

In September 2001, Indiana Conservation Officer Jeff Atwood was informed that the Fleetwood Cemetery had been disturbed. Atwood and another conservation officer went to the gravesite to investigate. During their initial investigation, they observed that the gravestones were removed, dirt was piled on top of the gravesite, and the foundation of the house was approximately eighty-nine feet away from Scalpelli's estimate of where the cemetery began. Atwood informed Scalpelli that he might be in violation of the law and further investigation was warranted. On October 4, 2001, Atwood served Scalpelli with a search warrant.

On December 12, 2001, the State charged Scalpelli with Count I, disturbing a cemetery without a permit; Count II, cemetery mischief; and Count III, moving a grave memorial without recording. Scalpelli requested a bench trial, and at the conclusion of that trial, the court found him guilty of Counts I and II, but acquitted him of Count III. At sentencing, the trial court merged Counts I and II, entered judgment of conviction on Count I, and sentenced Scalpelli to a suspended term of thirty days incarceration and one year of probation.

■ On appeal, Scalpelli asserts that the trial court erred as a matter of law in its interpretation of I.C. § 14–21–1–26.5. Specifically, Scalpelli asserts that the trial court incorrectly analogized I.C. § 14–21–1–26.5 to Indiana's carrying a handgun without a license statute and held the

**2.** Scalpelli also challenges his conviction under Cemetery Mischief, Ind.Code Ann. § 35–43–1–2.1 (West 2004). Scalpelli, however, was not convicted of cemetery mischief. As the Order on Sentencing, Probation, and Commitment makes clear, judgment of conviction was entered only on Count I, disturbing a cemetery. As such, we decline to address his arguments on this issue.

State was not required to prove as an element of the offense that Scalpelli knew he did not have a development plan. Under Indiana Law, the interpretation of a statute is a question of law reserved for the courts. *Romine v. Gagle*, 782 N.E.2d 369 (Ind.Ct.App.2003). We review such questions under a de novo standard and give no deference to a trial court's legal conclusions. *Id.* "A statute whose language is clear and unambiguous is not subject to judicial interpretation." *Romine v. Gagle*, 782 N.E.2d at 379. If, however, the statute is ambiguous, the court must determine the legislative intent and interpret the statute accordingly. *Whitacre v. State*, 619 N.E.2d 605 (Ind.Ct. App.1993), *op. adopted by* 629 N.E.2d 1236 (Ind.1994). To determine legislative intent, we look to the plain language of the statute and attribute the common, ordinary meaning to terms found in everyday speech. *Crum v. City of Terre Haute ex rel. Dept. of Redevelopment*, 812 N.E.2d 164 (Ind.Ct.App.2004).

I.C. § 14–21–1–26.5 states, in relevant part:

> (a) Notwithstanding IC 23–14–44–1, this section does not apply to the following: [Not applicable.]
>
> Except as provided in this subsection, subsection (b), and subsection (c), a person may not disturb the ground within one hundred (100) feet of a burial ground or cemetery for the purpose of erecting, altering, or repairing any structure without having a development plan approved by the department under section 25 of this chapter or in violation of a development plan approved by the department under section 25 of this chapter. The department must review the development plan not later than six-

ty (60) days after the development plan is submitted.

> (b) A development plan:
>
> (1) must be approved if a person intends to construct a new structure or alter or repair an existing structure that would significantly impact the burial ground or cemetery; and
>
> (2) is not required if a person intends to erect, alter, or repair an existing structure for an incidental or existing use that would not impact the burial ground or cemetery.

* * *

> (d) A person who recklessly, knowingly, or intentionally violates this section commits a Class A misdemeanor. However, the offense is a Class D felony if the person disturbs buried human remains or grave markers while committing the offense.

■ Therefore, to establish Scalpelli's guilt under I.C. § 14–21–1–26.5 as a class D felony, the State was required to prove beyond a reasonable doubt that Scalpelli: (1) recklessly, knowingly, or intentionally; (2) disturbed the ground, buried human remains, or grave markers; (3) within one hundred feet of a burial ground or cemetery; (4) for the purpose of erecting, altering, or repairing any structure; (5) without having a development plan approved by the DNR.[3]

As an apparent issue of first impression—the statute was enacted in 2000—the trial court was called upon to determine if the mens rea element of the statute applied to both disturbing the ground, et al. *and* failure to obtain a development plan approved by the DNR. The trial court explained:

---

**3.** At sentencing, the trial court ordered that Count I, Disturbing a Cemetery Without a Permit, a class D felony, be entered as a class A misdemeanor pursuant to its discretion under Ind.Code Ann. § 35–50–2–7(b) (West, PREMISE through 2004 2nd Regular Sess.).

[I.C. § 14–21–1–26.5] is a relatively new statute with an issue...fairly much of first impression in terms of the interpretation, what knowledge is required with respect to those statutes [sic]. Whether the culpability, the knowledge, the intent, criminal intent, applied not only to the act of disturbing the ground or of moving the grave memorial, but whether it also applies to the material element of doing so without a permit or development plan from the Department of Natural Resources and without filing in the County Recorder a description of it. Whether the criminal intent must go to a second material element really is an issue of first impression that I can see. If counsel have seen any cases on that I would, of course, welcome them. But I have not seen them. And that is the issue with which I'm struggling. So rather than leave everyone sit here [sic] while I continue to do legal research, I am going to take it under advisement and we are all going to come back for the announcement of the decision.

*Transcript* at 147–48. Thereafter, on May 10, 2002, the trial court reconvened to announce its decision:

In terms of whether Indiana Code 14–21–1–26.5, count one, the disturbing cemetery without a permit...requires the State to prove that you knew you were suppose [sic] to submit that development plan and recklessly, knowingly or intentionally failed to do so. There are cases involving driving on a suspended license, such as the one [Scalpelli] submitted in his brief, that say you do have to have knowledge of the suspension. There are also cases, like those submitted by [the State], with carrying a gun without a license, that say, no, you don't have to know that you're suppose [sic] to have a license. The prohibited conduct is carrying a handgun. Its an exception to that prohibited conduct if you have a license. And so I have tried my best to determine where this ca...or this statute falls within those cases and the other cases that talk about what is required for the criminal intent to make an act a crime. The best that I can ascertain, Mr. Scalpelli, this is more similar to carrying a handgun without a license cases. The Indiana law, as I understand it, prohibits disturbing the ground within the distance of the cemetery and certainly not moving grave markers. That is the prohibited criminal conduct and you must do that knowingly or intentionally or recklessly, which you did here. Then it is an exception to that that if you submit that development plan you may do it. Based on all of that, I believe that you are under these facts guilty of count I, disturbing a cemetery without a permit.

*Id.* at 151–52. We agree with the trial court's reasoning.

Ind.Code Ann. § 35–47–2–1 (West 2004) prohibits, with certain exceptions, "a person from carrying a handgun in any vehicle or on or about the person's body ... without a license issued under this chapter being in the person's possession." The statute contains no requirement that individuals know of the licensing requirement, nor has relevant caselaw found such an element implicitly in the face of statutory silence. In *Johnson v. State*, 256 Ind. 497, 269 N.E.2d 879 (1971), our supreme court rejected a defendant's claim that he was entitled to an instruction that as an element of carrying a handgun without a license the State must prove he knew of the licensing requirements. "It is only necessary that the [defendant] intended to do the act which is a violation of a criminal statute." *Id.* at 883. Further, in *Garcia v. State*, 260 Ind. 131, 292 N.E.2d 810 (1973), our supreme court affirmed a defendant's conviction for carrying a hand-

gun without a license and held that a non-Indiana resident could not use his lack of knowledge of Indiana's licensing requirements as a defense. In contrast to I.C. § 35–47–2–1, Indiana's driving on a suspended license statute does include as an element of the offense a defendant's knowledge that his/her license had been suspended. *See* Ind.Code Ann. § 9–30–10–16 (West 2004) ("[a] person who operates a motor vehicle: (1) while the persons driving privileges are validly suspended under this chapter ... and the person knows that the person's driving privileges are suspended ... commits a Class D felony"). I.C. § 9–30–10–5 (West 2004) also places an affirmative duty on the Bureau of Motor Vehicles (BMV) to determine if an individual should have a license suspended and to mail an individual notice of such suspension.

■ In the instant case, we hold that disturbing a cemetery without a development plan is more akin to carrying a handgun without a license than to driving on a suspended license. First, unlike I.C. § 35–47–2–1 (driving on a suspended license), in enacting I.C. § 14–21–1–26.5 the General Assembly placed no onus on the DNR or any other governmental agency to notify Scalpelli of the requirement to obtain a development plan. Further, in the context of driving on a suspended license, the BMV is required to make an affirmative determination that individuals should have their license suspended, no such determination is made by the DNR regarding I.C. § 14–21–1–26.5. In the face of I.C. § 14–21–1–26.5's plain language, we agree with the trial court—knowledge that a development plan is required is not an element of the statute. Furthermore, similar

to the reasoning of *Johnson v. State* in the context of possessing a handgun without a license, the conduct prohibited by I.C. § 14–21–1–26.5 is disturbing the ground, et al. within one hundred feet of a burial ground or cemetery. Had Scalpelli sought and received approval of a development plan from the DNR his conduct would have been excepted and no criminal liability would have attached. The trial court did not err in its interpretation of I.C. § 14–21–1–26.5.

■ Additionally, we note that Scalpelli asserts, in essence, that since he made every good faith effort to comply with I.C. § 14–21–1–26.5 and meant no harm he should not be held criminally liable. We remind him of the long-standing legal maxim: ignorance of the law is no excuse. *Mullis v. Kinder,* 568 N.E.2d 1087 (Ind.Ct.App.1991). The evidence presented at trial demonstrated that Scalpelli knowingly piled dirt on the cemetery and removed gravemarkers in order to build a residence that was less than 100 feet from the cemetery. It is uncontested that Scalpelli did not have a development plan from the DNR. Based on the foregoing, the State presented sufficient evidence to sustain Scalpelli's conviction under I.C. § 14–21–1–26.5.[4]

Judgment affirmed.

SHARPNACK, J., and BAKER, J., concur.

---

4. Scalpelli also asserts tangentially that the evidence was insufficient to establish that under I.C. § 14–21–1–26.5 he significantly impacted the cemetery. Our standard of review in sufficiency of the evidence claims is well settled:

> We will not reweigh the evidence or consider the credibility of witnesses. Only the

evidence most favorable to the verdict to-
gether with all reasonable inferences that
can be drawn therefrom will be considered.
If a reasonable trier of fact could have
found the defendant guilty based on the
probative evidence and reasonable infer-
ences drawn therefrom, then a conviction
will be affirmed.

*King v. State*, 799 N.E.2d 42, 46 (Ind.Ct.App.
2003) (citation omitted). The evidence dem-
onstrated that Scalpelli removed several
gravemarkers and ordered dirt to be placed
on top of the cemetery. The evidence is suffi-
cient to establish a significant impact on the
cemetery from Scalpelli's actions. We refuse
the invitation to reweigh the evidence.